**Esther Williams, Appellee, v. Yellow Cab Company et al., Appellants.**

**Gen. No. 46,746.**

First District, First Division.

June 21, 1956.

Released for publication September 12, 1956.

Jesmer and Harris, of Chicago, for appellants; Charles D. Snewind, of Chicago, of counsel.

Joseph M. Tobias, and James A. Thompson, both of Chicago, for appellee.

JUDGE NIEMEYER delivered the opinion of the court.

Defendants appeal from a judgment for $16,000 in a personal injury action arising out of a collision of a taxicab owned by defendant Yellow Cab Company and operated in its behalf by defendant Chester Commack in an easterly direction in or near the eastbound street-car track in the north half of West Cermak Road (22nd street) in Chicago, with plaintiff, a pedestrian crossing the street from south to north at a point not within a cross-walk as defined by statute (Ill. Rev. Stats. 1955, chap. 95½, par. 172) approximately 65 feet east of State street, a north and south street.

In the evening of January 7, 1954, about 8 o'clock, plaintiff and her 18-year-old son Wayne left an elevated train at 22nd street, intending to take a streetcar west to Chinatown to have supper. The elevated station is at the alley east of State street. A stairway descends from the station to the south sidewalk of 22nd street west of the elevated station and about 80 feet east of the east line of State street. Wayne preceded his mother and had crossed to the north walk of the street by the time his mother reached the sidewalk. She walked a few feet to the east and started directly across the street to Wayne. At that point 22nd street is 90 feet wide from curb to curb. East of State street it jogs

114

to the south about 40 feet. West of State street the streetcar tracks are in the center of the street. They swerve slightly to the south as they approach State street and then continue directly east beyond the elevated structure. The south rail of the eastbound track east of State street is approximately 20 feet north of the center line of the street and in the part of the street reserved for westbound traffic. (Ill. Rev. Stats. 1955, chap. 95½, par. 151.) Plaintiff and Wayne testified that plaintiff had reached the eastbound track when she was struck by the Yellow Cab. They are corroborated by the passenger in the cab. Defendant Commack testified that he crossed State street from the west and was driving about 6 feet south of the tracks at the point of the accident. Harry Fink, a driver of a Checker Cab, testified that at the time of the accident the Yellow Cab was approximately 15 feet south of the car tracks. This witness was impeached by his contradictory statements in a discovery deposition.

Plaintiff further testified that before she left the sidewalk the traffic light on the northeast corner of the intersection of State and 22nd streets was red for Cermak (22nd) and she assumed it was green for State street. She did not look at the lights after she left the sidewalk. She was looking for traffic. She looked to the west, to the east and to the north and did not see any oncoming vehicle or streetcar. There was nothing to obstruct her view of a cab coming across State street. She got as far as the center of the eastbound car track when she first saw the Yellow Cab, about 25 feet from her. She froze in her tracks and was struck by the cab.

Wayne testified that he saw his mother on the south sidewalk, when she was in the street a few feet from the south curb, and again when she was about 2 feet from the eastbound car tracks. The cab was then about

25 feet from her. There was room for the cab to go by without touching her.

Defendants moved for a directed verdict at the close of the evidence. The ruling on this motion was reserved and never made. Defendants also moved for judgment notwithstanding the verdict, and in the alternative for a new trial. These motions were denied. On appeal they contend that as a matter of law plaintiff was guilty of contributory negligence, that there is no evidence of negligence of the defendants, and, in the alternative, that the verdict is against the manifest weight of the evidence.

 Defendants' contentions are based on the assumption that "the portion of Cermak Road, south from a point midway between the westbound and eastbound car tracks, is necessarily used for eastbound traffic." This position is in direct conflict with the statute (chap. 95½, par. 151), which reads: "(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows: . . ." The exceptions following have no application to the facts before us. We cannot add to these exceptions. It is true, as stated by defendants, that this construction of the statute creates an anomalous situation affecting westbound vehicular traffic and eastbound streetcar traffic. It does not create an unusual or unfavorable situation affecting eastbound vehicular traffic, with which we are concerned. This traffic is given an unobstructed roadway 45 feet in width on the south side of the street. We must hold that driving eastward in the eastbound car track in the north half of the street is a violation of the statute. As hereinbefore shown, the evidence justifies the finding that defendants violated the statute in this respect. Such violation is prima facie evidence of negligence, so we cannot hold as a matter of law that defendants were free of negligence proximately contributing to

116

plaintiff's injuries. Neither can we say that plaintiff was guilty of contributory negligence as a matter of law in failing to see what she was not bound to look for—eastbound traffic in the westbound half of the street. Jones v. Standerfer, 296 Ill. App. 145, 154. Nor can we say that the finding of the jury adverse to the defendants on these questions is against the manifest weight of the evidence.

█ The case was given to the jury around 4:30 o'clock in the afternoon. The parties agreed that if a verdict was not reached by 10:30 the jury should be permitted to separate. A verdict was reached about that time and returned in court the following morning. It appears from the testimony of the bailiffs in charge of the jury that in response to questions from the jury as to how long they were to stay, a bailiff told them they were to stay until they reached a verdict, and later, around 10 o'clock, a bailiff jokingly said, "I'm going up to get the cots." A few minutes after 10:30 a bailiff went to the jury room to dismiss the jury and was informed that they had reached a decision. Defendants concede that the conduct of the bailiffs was free from any improper motive, but contend that it coerced the jury into returning a verdict to their prejudice. The jury was polled the following morning and none repudiated his verdict. The statements complained of should not have been made by the bailiffs, but we find nothing to support the claim of coercion of the jury and prejudice to the defendants.

█ Defendants' objections to plaintiff's counsel belittling his skill and ability to try the case, and to the tears of plaintiff during cross-examination, are not grounds for the reversal of the judgment. Defendants were not prejudiced by plaintiff's failure to establish the impeachment of defendants' witnesses on all matters as to which a foundation for impeachment was laid. We do not consider the damages awarded so

117

excessive as to show prejudice and bias on the part of the jury or to warrant a remittitur by this court. Plaintiff complained of pain in her back shortly after the accident and worked under difficulty for several days thereafter. She went to a health center where she was examined and X-rays taken. The doctors there directed her to the Southtown Hospital, where she was examined and further X-rays taken. She was then placed in a body cast for more than a week and thereafter fitted with a brace which she was wearing at the time of the trial. The physicians agree that plaintiff sustained a compression fracture of a vertebra, but differ, according to the interest of the party calling them, as to whether this fracture existed prior to the accident. The doctors advised her to be careful in her work, which is that of a charwoman at a Loop hotel. Defendants say that her loss of time, estimated most favorably to her, figured monetarily to slightly over $1000. Her doctor's and hospital bills, X-rays and cost of the cast amount to approximately $800. The verdict is liberal but not so excessive as to require a remittitur or reversal of the judgment.

The judgment is affirmed.

Affirmed.

FRIEND, P. J. and BURKE, J., concur.