Leo Ritter, Plaintiff, Counter-Defendant-Appellant, v. Andrew Hatteberg, Defendant, Counter-Plaintiff-Appellee.

**Gen. No. 11,028.**

Second District, First Division.
September 26, 1957.
Released for publication October 14, 1957.

Allen, Matthews, Jordan & Dean, of Aurora, for appellant.

Sears & Streit, of Aurora, for appellee.

JUSTICE McNEAL delivered the opinion of the court.

On December 26, 1952, between 3:30 and 4:00 o'clock P. M., plaintiff, Leo Ritter, was driving his 1950 Chrysler automobile east on Wallace Street toward its intersection with Ottawa Street in Joliet. Defendant, Andrew Hatteberg, was driving his 1952 Chrysler north on Ottawa Street. The day was clear and the pavements were dry. The automobiles collided at the intersection. Ritter sued Hatteberg and demanded judgment in the sum of $1,000 for property damage. Hatteberg answered and counterclaimed for $10,000 on account of personal injuries and property damage. The case was tried before a jury, which returned verdicts finding in favor of Hatteberg on the complaint and counterclaim and assessing his damages at $13,000. Judgments were entered on the verdicts. Ritter's post-trial motion was denied, provided Hatteberg filed a remittitur for $4,000. The remittitur was filed and judgment was entered in favor of Hatteberg for $9,000. Ritter appealed from the judgment entered against him and from the order denying his post-trial motion.

Appellant contends: that Hatteberg was guilty of contributory negligence as a matter of law and the verdict finding otherwise was against the manifest weight of the evidence; that prejudicial error was committed by injecting insurance into the case; and that the verdict was excessive and brought about by erroneous instructions. To determine whether the verdict was against the manifest weight of the evidence, it is necessary that we examine the evidence. The only

witnesses of the occurrence were the occupants of the two cars, Mr. and Mrs. Hatteberg and Leo Ritter.

Andrew Hatteberg testified that both streets were wide enough for traffic to proceed in either direction with cars parked on both sides. There were no traffic control signals at the intersection. As he drove north on Ottawa, he was six or eight feet east of the center of the street, and as he approached Wallace he was going 20 to 25 miles an hour. The visibility to his left was good. He saw no cars parked along either street near the intersection. He figured the intersection was clear. Mrs. Hatteberg was riding in the front seat. As she hollered "look out," the impact occurred. Hatteberg's car was just past the center so that the front of the car was in the northeast quarter of the intersection and the Ritter car was just a little north of the center of the intersection at the time of the impact. Ritter's right front fender hit Hatteberg's car on the left side in front of the front door, and spun it around "like a pinwheel." The car rolled southerly into the southeast quarter of the intersection and stopped. Ritter's car came to rest nearly half a block beyond the intersection, slanting southeast across the south side of Wallace Street.

Mrs. Hatteberg testified that they had been northbound on Ottawa Street one block before the accident and had traveled about 25 miles an hour. As they approached the corner they didn't see anything. She didn't see any cars parked along the west side of Ottawa Street as they approached Wallace, nor any cars parked west of the intersection. They entered the intersection first. When they were near the center of the intersection she saw the other car to her left, just coming over the sidewalk line. Before she could finish saying look out, the car struck them. It came suddenly—roughly around 35 miles an hour, north of the center line, and struck their car on the left side,

552

the front and the hood. After the impact Ritter's car was about a half block from the intersection. The Hatteberg car had been swung around and was heading south on the southeast corner. The left door flew open and Hatteberg was lying in the street. Mr. and Mrs. Hatteberg were taken to the hospital and a doctor took care of a cut over her eye. They went to the garage where their car had been hauled. Some men took them home and helped her husband into the house. While Mr. Hatteberg was calling the doctor and the insurance company, he about passed out.

Leo Ritter testified that he had visited a sick friend on Wallace Street about two blocks west of Ottawa. He drove east on Wallace at not over 25 miles an hour. Near the southwest corner of the intersection there was an ice house, and cars were parked along Wallace and also along Ottawa on the southwest corner. At the trial he couldn't tell how many cars were parked on Wallace, but admitted he said "about seven" when a pre-trial deposition was taken. He was on the right side of the center line of Wallace Street approaching Ottawa. He looked to the left and didn't see any cars and then as he proceeded he glanced to the right and kept going through Ottawa Street. Then from glancing to the left back to the right he saw the Hatteberg car was on top of him, about 30 feet from him. He was two-thirds across Ottawa and in the southeast corner when his car was hit on the right front fender by the left front fender of the Hatteberg car. The impact forced his head through the windshield and his shoulder against the dashboard. Although he doesn't recall anything after that until he woke up in the hospital where he received emergency treatment, he stated that his car stopped about 20 feet from the point of impact. On cross examination he testified that he looked to his right when he was 10, 15 or 5 feet from the intersection; and also that he didn't look to the right until he

was entering the intersection. When the question: "Do you testify that you didn't see the Hatteberg automobile at any time?" was put to him, he refused to answer under the Fifth Amendment and protested that the question had been asked three times. The Court directed him to answer the question and Ritter replied: "Yes."

In support of his contention that Hatteberg was guilty of contributory negligence as a matter of law, appellant cites: Kirchoff v. Van Scoy, 301 Ill. App. 366, and Wodecki v. Harold M. Pitman Co., 286 Ill. App. 610. In the cases cited the plaintiffs testified affirmatively that they did not look toward the direction from which defendants were approaching the intersection until the cars were about to collide, thereby negating any possibility that they were keeping a proper lookout or exercising due care. In the instant case Hatteberg testified that his visibility to the left was good, that he observed no cars parked along Ottawa Street south of the intersection on either side of the street, and none along Wallace Street. This testimony could have indicated to the jury that Hatteberg did look to his left and in the direction from which Ritter approached the intersection, otherwise Hatteberg could not have made the observations mentioned. Mrs. Hatteberg corroborated these observations and testified that they entered the intersection first. Considered in its most favorable aspect, there was evidence upon which the jury could have concluded that Hatteberg was driving at a reasonable rate of speed, keeping a proper lookout, and exercising due care.

The question of contributory negligence is one which is preeminently a fact for the consideration of a jury. Blumb v. Getz, 366 Ill. 273, 277. The question of due care is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may

reasonably and legally be drawn therefrom, tends to show the exercise of due care. Thomas v. Buchanan, 357 Ill. 270, 278. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. Ziraldo v. W. J. Lynch Co., 365 Ill. 197, 199; McManaman v. Johns-Manville Corp., 400 Ill. 423, 430. We are of the opinion that there was nothing in the evidence introduced by Hatteberg, standing alone and considered as true, together with the inferences which may legitimately be drawn therefrom, which would have warranted the trial court in finding as a matter of law that Hatteberg was not in the exercise of due care or was guilty of contributory negligence; and that these were proper questions for the jury to decide under all the facts and circumstances in this case.

The evidence pertaining to the speed of Ritter's car, first entry into the intersection, point of impact, the distance his car traveled after the collision, as well as the existence of parked cars to obstruct the view near the intersection, was conflicting. Where the evidence is conflicting, it is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based upon conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence. To be contrary to the manifest weight of the evidence an opposite conclusion must be clearly evident. Veselich v. Lichtsinn, 11 Ill.App.2d 372, 382. The evidence tended to show that Hatteberg was in the exercise of due care; that he was in the intersection when Ritter was at the crosswalk west of the intersection; that Ritter was traveling east in a westbound lane at a speed so much greater than the Hatteberg car that the impact or momentum of the Ritter car turned the

Hatteberg car around and moved it in the opposite direction and carried his own car about half a block beyond the point of collision; that Ritter failed to keep a proper lookout for traffic which had entered the intersection from his right; and that his negligence was the proximate cause of the collision. An examination of all the evidence leads us to conclude that the judgment is not against the manifest weight of the evidence.

Appellant urges that prejudicial error was committed by injecting insurance into the case. In relating what took place shortly after the accident, Mrs. Hatteberg said that three young men from the garage helped her husband home and that she found a chair for him and "he sat down and because he had been told to call the doctor when he got home and the insurance company, and that is what he did, and while he was doing that he about passed out." There was no objection and this reference to insurance was not ruled upon by the trial court and cannot be considered on review by this court.

In the additional abstract it appears that on December 31, 1952, Ritter signed a statement in which he said: that he stopped his car about 120 feet east of the intersection; that the other car stopped close to the point of impact, headed south; and that he did not see the other car either before it hit or until he got out of his car. In his deposition taken on March 24, 1956, when asked if he recalled talking to an attorney about the accident, Ritter mentioned Hartford Insurance, and he denied ever stating that his car traveled 120 feet beyond the intersection or that he didn't see the Hatteberg car before the collision.

At the trial, after Ritter had stated on cross examination that his car went only 20 feet after the impact, Hatteberg's counsel requested a conference with the court out of the presence of the jury. The court and

556

opposing counsel were apprised of Ritter's tendency to mention insurance. The court said that Ritter knew better than to bring out insurance. His attorney questioned the extent of his client's knowledge, but stated that he had been cautioned and that as far as he was concerned, Hatteberg's attorney was going to proceed at his own peril.

On further cross examination Ritter had difficulty remembering whether he made the statement. He admitted that his signature was on the document, but when asked if his signature was on each and every page, he replied: "That's right. I think it is blackmail because this was recorded by—it would be a Hartford Insurance man. I think it is blackmail." His attorney promptly moved to withdraw a juror and to declare a mistrial.

There is no indication in the record that the Hartford Company carried insurance on Ritter's car. It is unlikely that an insured would describe the action of his own carrier in the investigation of an accident in which he was involved as blackmail. Obviously the Hartford Insurance man was investigating the accident because that company carried insurance on the Hatteberg car. Ritter's claim or defense against the counterclaim could not have been prejudiced by reference to insurance carried by his adversary at the trial.

██ We are of the opinion that Hatteberg's attorney acted in good faith and preferred no reference to his client's insurance. We find no basis for appellant's suggestions that opposing counsel deliberately "prodded" Ritter into references to insurance and blackmail, or that such references were the result of justifiable anger produced by counsel's persistence, or that Ritter was prejudiced by the failure to introduce the statement in evidence and thereby establish his impeachment after the foundation therefor had been laid. Wil-

557

liams v. Yellow Cab Co., 11 Ill.App.2d 112, 117. Appellant's counsel stated that his client had been cautioned, but it is apparent that he had not been properly cautioned against irresponsible and unresponsive answers. We find no case where a mistrial has ever been granted on account of an unresponsive reference to insurance in answer to a legitimate inquiry. Williams v. Consumers, 352 Ill. 51, 55; Kelly v. Call, 324 Ill. App. 143, 150. Here the reference to insurance was solely the fault of appellant. The trial court did not err in denying Ritter's motion to withdraw a juror and declare a mistrial.

 Appellant complains that the verdict was excessive and brought about by erroneous instructions, and that the judgment entered after requiring a remittitur of $4,000 is still excessive. Hatteberg was 74 years of age at the time of the accident. Previously he had lost his right leg, but there is nothing to indicate that this loss interfered with his ability to operate an automobile. He sustained a comminuted fracture of his left collarbone. The fourth, fifth and sixth ribs on his left side were fractured, his head and right shoulder were bruised, and he had a cut about six centimeters long on his left elbow. He was given sedatives to control pain. A clavicular cross and rib belt were applied to immobilize his shoulder and ribs. He was flat on his back in the hospital five weeks, in bed at home for two weeks, and had to be quiet another two weeks before he was able to use his crutches. He was examined shortly before the trial and the doctor testified that the fractures had healed satisfactorily, but that there was some limitation of motion of the right arm. His out of pocket expenses for hospital and medical care and automobile repairs were over $1,900. The question before us is whether the amount of the verdict as modified by the remittitur falls within the limits of fair and reasonable compensation or is so

large as to shock the judicial conscience. Barango v. Hedstrom Coal Co., 12 Ill.App.2d 118, 138. Although the amount of damages awarded is liberal, we do not consider the amount so excessive or shocking as to show prejudice and bias on the part of the jury or to require further remittitur or reversal of the judgment.

At Ritter's request the court gave fifteen instructions, three of which were peremptory on the questions of due care or contributory negligence. Of the eight instructions given for Hatteberg, appellant contends that all were erroneous except V, which defined negligence and ordinary care, and VIII, which summarized the allegations in the counterclaim.

 Appellant is in no position to object to the first three instructions given for Hatteberg. Instruction I reads: "that it was the duty of the plaintiff, Leo Ritter, to exercise ordinary and reasonable care and prudence in the operation and control of his motor vehicle." Appellant complains that instruction I singles out Ritter, and infers that he was the only one required to exercise such care and that he was not in the exercise of such care. Many of appellant's instructions singled out Hatteberg by name and are susceptible of similar inferences. As to instruction II—that Ritter cannot recover at all if he has failed to prove one or more of three specified propositions by a preponderance, or if the evidence is evenly balanced, or preponderated in favor of the defendant, appellant's objections are obviated by similar language in his first instruction. Likewise instruction III—that the rule requiring proof by a preponderance does not require proof beyond a reasonable doubt, is almost identical with appellant's thirteenth instruction. A party cannot complain of alleged error in his opponent's instructions where his own are subject to the same criticism. Peterson v. General Rug and Carpet Cleaners, 333 Ill.

559

App. 47, 64; Lincoln Park Com'rs v. Schmidt, 375 Ill. 474.

By instruction IV the jury was instructed that it was not necessary for Hatteberg "to prove all of the alleged acts of negligence charged in his complaint. In order to prove the defendant guilty of negligence it is sufficient if plaintiff proves by a preponderance of the evidence any one or more of the charges of negligence contained in his complaint." Appellant complains of the omission of the elements of proximate cause and due care. This instruction does not direct a verdict. No instruction need state all the law in a case. It is sufficient if, taken as a series, the instructions correctly advise the jury as to the law applicable to the case. Minnis v. Friend, 360 Ill. 328; Allied Mills v. Miller, 9 Ill.App.2d 87.

Instruction VI is as follows:

"The Court instructs the Jury that if you find for the counter-plaintiff, Andrew Hatteberg, in this case you will be required to determine his damages, if any, and in determining the amount of damages the plaintiff has sustained, if any, you have a right to and you should take into consideration all the facts and circumstances as proven by the evidence before you; the nature and extent of plaintiff's injuries, if any, so far as the same are shown by the evidence to be the direct result of the collision in question; his bodily suffering, if any, resulting from such physical injuries; and you may find for him such sum, if any, as in your judgment, under the evidence and instructions of the Court, will be a fair compensation for the injuries he has sustained, if any."

Appellant complains that instruction VI told the jury to assess damages for Hatteberg in case they found for him under Ritter's complaint and that the plaintiff, as distinguished from the counter-plaintiff, made no claim for personal injuries, but for property

560

damage only. Since only Hatteberg claimed and proved damages for personal injuries, the jury could not have been confused by the failure to refer to him as counter-plaintiff throughout the instruction. As used in this instruction the words "in this case" were equivalent to "then" or "in such case." These errors, if any, were completely technical and were not of such a nature as to confuse or mislead the jury.

As to instruction VII that "if you believe from the evidence that any witness in this case has knowingly and wilfully sworn falsely on this trial to any matter material to the issues in this case, as elsewhere defined in these instructions, then you are at liberty to disregard the entire testimony of such witness, except in so far as it has been corroborated . . . ," appellant contends that the instruction does not limit the false testimony to material facts on the counterclaim, but applied to the whole case including his complaint and the issues thereunder were not defined. By Ritter's twelfth instruction the jury was instructed concerning the statutory provisions relative to the right of way at intersections, and in his fifteenth instruction the jury was directed to find Hatteberg guilty if the jury found that he failed to exercise due care although approaching the intersection from Ritter's right, and such failure proximately caused the accident without Ritter's negligence. Thus, the jury was advised as to the issues considered by appellant to be material to his claim. It is contended further that there was no evidence upon which to base this instruction because "the testimony of all witnesses established virtually no conflict whatever," but in appellant's reply brief it is suggested that it was necessary that the jury be accurately instructed because they had to weigh conflicting evidence. We agree that the evidence was conflicting, and considering all of the instructions as a whole, we are of the opinion that they were substantially correct.

561

We have carefully considered all of the instructions given in this case and we cannot say that the jury was confused or misled or appellant prejudicially affected by any instruction complained of on this appeal.

There is no reversible error in the record. The judgment of the Circuit Court of Kendall county is affirmed.

Judgment affirmed.

DOVE, P. J. and SPIVEY, J., concur.