George W. Vierke and Myrtle Vierke, Plaintiffs-Appellants, v. Sunset Valley Creamery Company, Defendant-Appellee.

**Gen. No. 49,668.**

First District, Fourth Division.

April 14, 1965.

Rehearing denied May 19, 1965.

Benjamin M. Loiben, of Chicago (Norton Wasserman, Orner & Wasserman, of counsel), for appellants.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (David Jacker, Thomas D. Allen, and John M. O'Connor, Jr., of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from a judgment in favor of the defendant entered upon a jury verdict. The complaint consisted of two counts. The first count, on behalf of George W. Vierke, charged defendant with both negligence and willful and wanton conduct in the operation of its truck; the second count was on behalf of Myrtle Vierke for loss of consortium. We will refer to George W. Vierke as "plaintiff."

Plaintiff contends that the verdict is contrary to the manifest weight of the evidence and is palpably erroneous for the following reasons: defendant's driver was negligent as a matter of law; the refusal to give plaintiff's proffered right of way instruction had the effect of directing a verdict against plaintiff on the issue of contributory negligence; and the denial of recovery for the injuries sustained by plaintiff "indicts the verdict."

The collision occurred at the intersection of 68th Street and Western Avenue in Chicago between 11:30 a. m. and noon on June 6, 1958. It was uncontroverted

that the day was fair, the pavement dry and the visibility good; that plaintiff was driving his car eastbound on 68th Street and that defendant's truck was proceeding north on Western Avenue; that Western Avenue had six lanes: three for northbound traffic, three for southbound traffic (the two curb lanes were used for parking).

Plaintiff testified that:

> As I approached Western Avenue heading eastbound on 68th Street, I stopped at the sidewalk line in front of the cars. I knew that the sign was down because I passed there every day. After making my stop, I pulled out from the northbound traffic going south [sic], and I stopped at the curb line. I made two stops there, and there were no cars. The light was on the red at 67th Street, so I proceeded to the middle of 68th Street or [sic] Western Avenue to the yellow line. Then I stopped there.

> . . . . . .

> When I stopped the third time, half of my car was across the yellow center line of Western Avenue, and half of my car was still in the southbound lane nearest the center of Western Avenue.

Plaintiff testified that when he first stopped he could see two trucks proceeding north on Western Avenue; that when he stopped a second time the two trucks were "quite a ways down, half a block. I would estimate their speeds at about ·thirty-five, forty miles"; that when he stopped the third time the trucks "were down about forty feet"; that at this time defendant's truck attempted to pass the other truck by pulling into the west or inner northbound lane which was "the lane in which my car was standing." Plaintiff further testified that after defendant's truck driver saw him the driver tried to cut back into the center

325

lane by going east, to his right; that at the time of impact defendant "was still going about forty miles an hour" while "my car was standing still." Plaintiff testified that the "right fender was the first part of my car that was hit"; and that "my automobile did not run into the side of the truck."

Defendant's truck driver, Ray Bonnell, testified that:

> In the block before this accident, I was going about thirty miles an hour. . . .

> At no time did I leave the center northbound lane before the time of this accident. At the time of the accident I was in the center lane going north. As to whether there was another truck proceeding north just ahead before this accident, not that I remember. The first knowledge I had of this accident was when Mr. Vierke hit me. The right-hand corner of his car hit the side door of the cab of the truck.

> . . . . . .

> With respect to whether Mr. Vierke was standing still or moving at the time of the impact, he was moving. He must have been. I know this because he hit me and I did not hit him. If I would have hit him, I would have hit him with my front end. The first time that I saw him was when he hit me.

The defendant testified that after the collision:

> He [plaintiff] said something. I said, "well, you should have stopped". That is all I said to him, and that is all he said to me.

Defendant's witness, Russell F. Lacey, who was driving south on Western Avenue next to the center line, testified that:

I was about fifty feet from the intersection when I first saw the automobile that had the collision with the milk truck. At that time he was out past the building line, but was not in the intersection yet. He was going about twenty-five miles an hour. The car crossed my path and hit the truck. The truck that it came into contact with was right in the middle of the intersection. The truck was going north. The truck was in the center northbound lane. At the time it struck the truck, I would say the car was going about twenty-five miles an hour. The car did not slow down at all as it crossed Western Avenue.

On cross-examination he testified that he first saw plaintiff's car when "it was going across the front of my car."

Mae Lacey, who was riding in the front seat of her husband's car, testified that:

I saw an automobile eastbound on 68th Street that was later involved in this accident. I saw a black car going east, and it was about at the building line on the west side of Western Avenue going east on 68th. The car went clear across the street without slowing down or stopping until it hit the truck. At the time the truck was hit, the truck was northbound in the center lane going north. It was in the intersection at the time that the car hit the truck. When I first saw the truck, it was just a little bit before the intersection. The truck did not change lanes at all.

The car came in contact with the front cab behind the door. The front part of the car was involved in the collision. The car was moving at the time of the impact.

Chicago police officer Peter M. Schaack investigated the accident. He questioned the plaintiff after the collision:

> I asked Mr. Vierke how far the car [sic] was away when he first saw it. He answered one-hundred fifty feet. I asked him how fast he was going at that time, and he said "Ten miles an hour." I asked him how fast he was going at the time of the impact, and he said, "Ten miles an hour." I asked him "How far he went after the impact" and he told me, "Ten feet."

Plaintiff urges that the verdict is against the manifest weight of the evidence. In refutation defendant refers to Ritter v. Hatteberg, 14 Ill App2d 548, 555, 145 NE2d 119, where the court said:

> Where the evidence is conflicting, it is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based upon conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence. To be contrary to the manifest weight of the evidence an opposite conclusion must be clearly evident.

Applying this principle to the instant case, we find that the verdict is not contrary to the manifest weight of the evidence.

█ Plaintiff argues that defendant's driver Bonnell was negligent as a matter of law. The evidence indicates a conflict as to the negligence of defendant's driver. It is incumbent on the jury to resolve this question of fact. Pomrenke v. Betzelberger, 41 Ill App2d 307, 190 NE2d 522; Conner v. McGrew, 32

Ill App2d 214, 177 NE2d 417; Pfister v. West, 53 Ill App2d 305, 203 NE2d 35.

Plaintiff contends in his post-trial motion that the trial court committed reversible error in refusing to give his "Right of Way" instruction.[1] The proffered instruction is properly used only when motor vehicles approach an unprotected intersection. Plaintiff testified:

> The first stop was at the sidewalk on the west side of Western Avenue. That's where the stop sign was. . . . The stop sign itself was knocked down and laying on the ground. . . . I knew that the sign was down because I passed there every day.

Defendant's driver testified "There are no traffic controls at the intersection of 68th and Western. There was a stop sign for 68th Street." The distinction between protected and unprotected intersections was recognized in Smith v. Illinois Valley Ice Cream Co., 20 Ill App2d 312, at 327, 156 NE2d 361:

> Defendant's instructions . . . were right-of-way instructions attempting to define the respective rights of the parties. The instructions were applicable to unprotected intersections, whereas the intersection in question was equipped with stop signs on Sanger Street. The court properly refused these instructions.

We find that the tendered instruction was properly refused.

■ On appeal plaintiff argues that the failure to give any instruction on the right of way had the effect of directing a verdict against plaintiff on the

---

[1] IPI instruction 70.02 defining which vehicle has the right of way at unprotected intersections.

issue of contributory negligence. When his proffered instruction was refused plaintiff failed to offer any other instruction on right of way. Additionally, he did not include this point in his extensive post-trial motion. This omission precludes him from advancing the point on appeal. (Ill Rev Stats, 1957, c 110, § 68.1(2)); Hoff v. Yellow Cab Co., 53 Ill App2d 333, 337, 203 NE2d 8.

 Irrespective of the alleged negligence of defendant, the plaintiff must prove himself free from contributory negligence, Jellen v. New York, C. & St. L. R. Co., 53 Ill App2d 44, 202 NE2d 665 (Leave to Appeal Denied, March Term, 1965). The question of due care of one entering a preferred highway protected by a stop sign is ordinarily a question for the jury. Pennington v. McLean, 16 Ill2d 577, 158 NE2d 624. The verdict of the jury for the defendant is amply supported by the evidence and cannot be disturbed since it is not against the manifest weight of the evidence. Ritter v. Hatteberg, supra. Therefore, a discussion of the nature and extent of plaintiff's injuries is unnecessary.

The judgment of the trial court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.