Harold Jeffery Bibby, a Minor, by Harriet E. Bibby, His Mother and Next Friend, Plaintiff-Appellant, v. Eugene Meyer, Defendant-Appellee.

**Gen. No. 64–111.**

Fifth District.

June 8, 1965.

Ryan and Heller, of Mattoon (Harlan Heller, Robert G. Notman, and John W. Huffman, of counsel), for appellant.

Fred McCollum and James B. Moses, of Smith, McCollum & Riggle, of Flora, for appellee.

MORAN, GEORGE, J.

Plaintiff appeals from an order entered in the Circuit Court of Effingham County denying plaintiff's post-trial motion for a new trial and entering judgment on the verdict of the jury in favor of the defendant in a negligence action for personal injuries.

Plaintiff, a minor, by his next friend and mother, sued the defendant for personal injuries arising out of an accident occurring on August 30, 1959 at the intersection of Scott and Morgan Streets in the city

of Newton, Illinois. Plaintiff, who was fourteen years of age at the time of the accident, was a passenger in the front seat of his mother's car which she was driving in a southerly direction on Scott Street when a collision occurred between the two cars resulting in injuries to the plaintiff. The surface of Morgan Street was level and unobstructed by hills or curves, whereas Scott Street was hilly on both sides of the intersection. Just prior to the accident the automobile in which plaintiff was a passenger moved downhill for approximately one-half block and then uphill the remaining distance to Morgan Street. Scott street makes a slight jog of approximately seven feet to the east at its intersection with Morgan Street. There was an embankment on the northwest corner of Scott and Morgan Streets with a fence and high weeds on the embankment which obstructed the view of plaintiff's mother as she approached the intersection.

The errors assigned are: (I) The verdict is contrary to the manifest weight of the evidence; (II) The court committed reversible error in refusing to allow plaintiff to amend his complaint for the purpose of adding language which would admit proof of plaintiff's medical expenses.

Harriet Bibby, the mother of plaintiff, testified that on the 30th day of August, 1959, she was driving her 1957 Ford in a southerly direction on Scott Street approaching the aforesaid intersection of Scott and Morgan Streets at a speed of 20 to 25 miles per hour. She stopped at Morgan and looked to the right and left before proceeding through Morgan. She could not see more than a car length to her right because of a three-foot high fence surrounded by high weeds on the corner on her right. She had enough visibility on her left to know that it was safe to go through Scott Street. She doesn't remember anything about the accident after entering the intersection. Her first recol-

lection was waking up in an ambulance. When she stopped at the intersection prior to entering it, her son, Jeffery, was just sitting there on the right side of the front seat.

Plaintiff, Harold Jeffery Bibby, testified that on August 30, 1959, his mother took him for a drive in the country. He remembered turning onto Scott Street but didn't remember a thing after that. The first thing he recalled about the accident was in an ambulance on the way to the hospital in Olney, Illinois.

Claude Flannagan, a state policeman, called by plaintiff, testified that he arrived at the scene of the accident ten or fifteen minutes after the accident happened and that the weather was clear and the pavement dry. The 1957 Ford which had been operated by plaintiff's mother, Harriet Bibby, was up on an embankment on Morgan Street, slightly over 46 feet east of what he determined to be the point of impact. The 1957 Pontiac was on Morgan Street a little over seventeen feet east of the point of impact. He tracked forty-four and one-half feet of skid marks, commencing on Morgan Street and running in an easterly direction to the point of impact. He stated that after reaching the point of impact the direction of the skid marks changed from an east and west direction to a southeasterly direction and led right up to the Meyer car. The 1957 Ford of Mrs. Bibby was extensively damaged on the right side from one-half way back on the left front fender, back and including the front door section.

Ruby Behler on behalf of the plaintiff testified that she was at her mother's home on the Southwest corner of Scott and Morgan when the accident happened; that the northwest corner of the intersection was a vacant lot all grown up with weeds. She saw Mrs. Bibby's car coming south on Scott Street which was hilly on both sides of the intersection. When she first

159

observed Mrs. Bibby's car it was in a little dip traveling south toward the intersection at a slow rate of speed. At about the time the Bibby car got to the intersection she heard another car traveling east with the motor loud, which she guessed was traveling faster than normal, although she did not form a judgment as to its speed. The front of the car from the west struck the right side of the car going south. The cars then went into a yard southeast of the point of impact. She identified the skid marks on the road shown in plaintiff's exhibit 4 as being made by defendant's Pontiac. Mrs. Bibby was more than one-half way across the intersection and going straight at the time of impact.

Defendant Meyer, called under section 60 of the Civil Practice Act, testified that he was driving a 1957 Pontiac; when he first saw the 1957 Ford it was entering the intersection. He was about fifteen or twenty feet from the intersection at that time. He was then impeached by his deposition wherein he said he was 30 or 40 feet from the intersection. He said he got two arrest tickets, one for failure to yield the right of way and one for driving too fast for conditions. When he first observed Mrs. Bibby's car he was going thirty to thirty-five miles per hour.

On direct examination Eugene Meyer, the defendant, testified that he was driving east on Morgan Street at the time of the accident; that Morgan Street was level; that he saw a 1957 Ford driven by Mrs. Bibby when it was from five to seven feet from the intersection; that it was moving and he never did see the Bibby car in a stopped position; that the Bibby car was on his left going south and traveling about twenty to thirty miles per hour. He applied his brakes which were effective and slowed his car. His car ran into the other car. He could not estimate the speed of his car at the time it collided with the Bibby car.

He struck the right front of the Bibby car. He thought it damaged it back to the front door. After the collision the Bibby car went north and east. It didn't seem like the brakes were applied on the Bibby car. He was ticketed and paid a fine because he didn't want to go to the expense of hiring a lawyer. He doesn't know exactly how far he was from the intersection when he saw Mrs. Bibby's car. A couple of years ago he said thirty to forty feet. That was his best judgment then.

■■■ We first consider plaintiff's contention that the verdict of the jury was against the manifest weight of the evidence. For an appellate court to grant a new trial, it is necessary that the verdict be against the manifest weight of the evidence. In Ritter v. Hatteberg, 14 Ill App2d 548, 145 NE2d 119, the court said at page 555, of its opinion:

"Where the evidence is conflicting, it is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based upon conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence. To be contrary to the manifest weight of the evidence an opposite conclusion must be clearly evident."

The foregoing quotation is a clear exposition of the law binding on courts of review in the State of Illinois when the contention is made that the finding of the jury is against the manifest weight of the evidence. See also Dix v. Buell, 54 Ill App2d 80, 203 NE2d 290.

■■■ The evidence as to the negligence of the defendant is somewhat in conflict. Under normal circumstances the defendant would have the right of way over cars approaching from his left under the provi-

161

sions of section 165 of chapter 95½, Illinois Revised Statutes of 1959. If the jury believed the defendant's testimony, they could find that he was driving at a reasonable rate of speed when he suddenly saw the car operated by Mrs. Bibby about to enter the intersection from his left and that thereafter he did everything that he could to avoid the collision. We must remember that both the jury and the trial judge saw and heard the witnesses. Where the evidence is conflicting, it is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. One of the most frequently cited cases illustrating this legal principle is Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 147, 72 NE2d 705, 706, wherein the court said:

> " 'There are many things which a jury observes on the trial in such case that do not appear from the printed record—the appearance of the respective witnesses, their manner of testifying and a great many other circumstances. They are in a much better position in such case to determine the truth of the matter in controversy than a court of review.' . . . Under the law we cannot disturb the verdict of the jury unless it is clearly against the manifest weight of the evidence. *Manifest means clearly evident, clear, plain, indisputable.*" (Italics in original.)

From the foregoing we find that the verdict in favor of the defendant was not so contrary to the manifest weight of the evidence that we should order a new trial.

Plaintiff further contends that the trial court committed reversible error when it refused to allow him to plead and prove certain medical expenses which

had been incurred as a result of his injuries. Within a year after the accident the defendant secured a release from the plaintiff and his mother, releasing him from all liability resulting from defendant's conduct. Since this settlement had not been approved by the Probate Court, plaintiff ignored the release and filed suit for his injuries. He attempted to plead and prove the medical expenses incurred as a result of his injuries as a part of his damages. The defendant did not contest plaintiff's right to bring the suit for his injuries, but did successfully contend in the trial court that since plaintiff was a minor, this item of damage properly belonged to his mother and since his mother had released defendant, the mother's release would be binding on the plaintiff to the extent of the medical expenses incurred. We might add that the amount paid by the defendant for the release was $1,000.00 and the amount of the medical expense was $231.84.

■ ■ The only restriction that the court's ruling placed upon plaintiff in the trial of this case was to prevent him from introducing into evidence medical bills and hospital expenses incurred as a result of his injuries. Since he was a fourteen-year-old minor and since his mother was the sole surviving parent, the cause of action for plaintiff's medical expenses properly belonged to the mother. In the very recent case of Graul v. Adrian, 32 Ill2d 345, 205 NE2d 444, our Supreme Court stated in unequivocal language that parents are liable for the medical expenses of their minor children. Therefore, the cause of action belonged to plaintiff's mother and the release which she executed effectively barred the proof of this item of damage in the present case.

The verdict of the jury is not against the manifest weight of the evidence nor is there any reversible er-

ror in the record. The judgment of the Circuit Court of Effingham County is affirmed.

Judgment affirmed.

EBERSPACHER, P. J. and GOLDENHERSH, J., concur.