Jeanie SAMPLE, Plaintiff-Appellant,

v.

Mark L. WITT, Defendant-Respondent.

No. WD 37314.

Missouri Court of Appeals,
Western District.

April 8, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 22, 1986.

Application to Transfer Denied
July 15, 1986.

Andrew J. Gelbach, Warrensburg, for plaintiff-appellant.

Donald C. Bollard, Kansas City, for defendant-respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

Jeanie Sample, plaintiff-appellant, appeals from a jury verdict rendered in favor of respondent Mark Witt on a negligence claim for personal injuries arising out of a one car accident.

Miss Sample and Mark Witt had a date and had gone dancing at Quincy's located in the Adams Mark Hotel in Kansas City. Around 2:30 or 3:30 a.m., they began their return trip to Miss Sample's home in Warrensburg, Missouri. Mr. Witt drove east

on I–70 in his new $4 \times 4$ pickup truck. At some point while on I–70 Miss Sample fell asleep and did not wake up until after the accident had occurred.

From I–70 Mr. Witt turned onto Missouri Highway 131 at Odessa. Missouri Highway 131 is a two lane asphalted road intersecting with U.S. 50 which goes into Warrensburg. Mr. Witt testified he had never traveled this route before. The accident happened approximately 1.9 miles north of the road's intersection with U.S. 50. At that point there is a curve which turns to the west when traveling southbound. On the night of the accident it was clear and dry but the road was dark as there were no street lights in the area. As Mr. Witt entered the curve he lost control of his truck and skidded across the opposing lane of traffic. He hit the graveled shoulder on the east side of the road and went over a steep embankment. The truck rolled over at least once before coming to a halt. The truck rested with its headlights facing back north. Miss Sample, who had been asleep, was thrown through the rear window and suffered lacerations and bruises. Mr. Witt suffered minor cuts and bruises.

Prior to the accident Mr. Witt claimed he had been traveling between 40 m.p.h. and the posted speed limit of 55 m.p.h. Mr. Witt testified he was unaware of the approaching curve and did not see any road sign indicating this or any sign which cautioned drivers to reduce speed for the upcoming curve. Plaintiff presented a photograph (Exhibit F) taken during daylight hours sometime prior to trial which reveals a sign denoting an approaching curve. The accident report made by the investigating State highway patrol officer on the morning of the accident did not state there was any traffic control sign.

Mr. Witt asserts at the time he entered the curve he was traveling no more than 50 m.p.h.[1] He stated at that point he noticed there was gravel in the roadway. He estimated he was 60 to 75 feet away from the

gravel before he saw it. Mr. Witt stated he first thought the gravel would give him no problem. Then, he began braking and steering to the right to avoid a collision but it did not prevent him from sliding sideways off the road. Mr. Witt thought the combination of the gravel and the abrupt curve to the right caused him to lose traction and control of the vehicle. Mr. Witt did not know where the gravel came from but assumed the gravel had been used to fill a pothole.

Plaintiff called Robert Hutton, a maintenance area supervisor for the Missouri Highway and Transportation Department, to testify. He stated there was no record indicating there were potholes in the area or repairs having been made. He testified the last time that the department had done any work in the area was in July 1983. He also stated, however, he had seen gravel trucks lose part of their load before. The investigating officer at the scene of the accident stated he did not remember seeing any potholes or finding any gravel on the roadway itself. He admitted that at the time of the accident he had no reason to look for gravel or defects and did not return to the scene after speaking with Mr. Witt. Both Miss Sample and Mr. Witt were taken to Johnson County Memorial Hospital in Warrensburg. At that time the investigating officer questioned Mr. Witt. Mr. Witt stated he told him he was tired at the time of the accident but that he had not fallen asleep. The officer testified at trial that Mr. Witt had stated he had fallen asleep but the officer also stated his official report did not disclose that fact.

Miss Sample testified she asked Mr. Witt how the accident had happened and he responded "that he may have been going too fast and that it was totally his fault, and he would make sure that I was taken care of." Mr. Witt does not claim or assert that Miss Sample did anything to cause the accident or could have done anything to prevent its occurrence.

---

1. Plaintiff's interrogatory as typed reads "no more than 60 mph." Mr. Witt stated he discovered this typographical error at his deposition and corrected it. He testified he was going no more than 50 m.p.h. and told the state trooper the same.

The negligence claim was submitted to the jury under a multiple negligent act verdict director. The jury returned a verdict for the defendant and judgment was entered upon the verdict. Plaintiff filed a motion for new trial. After a hearing on the issue, the trial judge denied the motion for new trial. The appellant isolates the trial judges remarks during the hearing in which he stated, "this is a case in which, as I see it, the jury found defendant wasn't negligent and bought the gravel theory. I wouldn't have bought it, but they did" as evidence the verdict is in error.

I [2]

Appellant alleges that the trial court erred in not granting plaintiff's motion for directed verdict at the close of all the evidence or her motion for judgment notwithstanding the verdict. She asserts the evidence reveals defendant was negligent, as a matter of law, thereby, entitling her to a judgment in her favor.

It is a very rare instance in an automobile accident case when a directed verdict may be properly granted to the party having the burden of proof. *Saupe v. Kertz*, 523 S.W.2d 826, 829 (Mo. banc 1975). This remains true even if no evidence is presented by defendant as the jury may not believe the plaintiff's evidence. *Pratt v. Cudworth*, 637 S.W.2d 720, 723 (Mo.App. 1982). As oft quoted, the Supreme Court in *Zagarri v. Nichols*, 429 S.W.2d 758, 760 (Mo.1968) acknowledged a directed verdict is warranted "[o]nly in exceptional circumstances, as in the case where the defendant in his pleadings or by his counsel in open court admits or by his own evidence establishes plaintiff's claim, or 'where there is no real dispute of the basic facts supported by uncontridicted testimony essential to a claim.'" Defendant's evidence must "clearly and unequivocably" reveal the ultimate fact of negligence. *Id.*

■ Plaintiffs case was submitted in three alternative theories of negligence: (1) failure to keep a careful lookout; (2) driving at an excessive speed; and (3) driving on the wrong side of the road. Whether a driver has failed to keep a proper and careful lookout for possible hazards is usually a jury question and is dependent upon the surrounding conditions and circumstances. *Chambers v. Kansas City*, 446 S.W.2d 833, 839 (Mo.1969). Likewise, whether negligence attaches when a plaintiff asserts the defendant has driven at an excessive speed, or on the wrong side of the road is usually answered by the triers of fact after considering all the evidence. *Ritter v. Lindberg Acoustics, Inc.*, 501 S.W.2d 207, 208 (Mo. App.1973); *Scaggs v. Uetrecht*, 244 S.W.2d 17, 20 (Mo.1951).

■ Plaintiff attempted to prove, and the defendant correspondingly denied, the non-existence of gravel in the road, the existence of a traffic control sign and the probability of defendant's falling asleep at the wheel. Additionally, there was conflict in the evidence concerning the speed at which defendant entered the curve. The resolution of these fact questions and whether the conditions as determined by the jury amounted to a finding of negligence are questions for the jury, not this court. "Negligence is ordinarily a question for the jury and always is when the evidence is conflicting or where, the facts being undisputed, different minds might reasonably draw different conclusions from them." *Rickman v. Sauerwein*, 470 S.W.2d 487, 489 (Mo.1971). Additionally, the primary job of the jury is to pass upon the credibility of the witnesses, *Davis v. Fiske*, 578 S.W.2d 328, 331 (Mo.App.1979), to aid in that determination.

■ When considering plaintiff's motion for judgment notwithstanding verdict this court views the evidence in a light most favorable to the defendant. To support plaintiff's motion, liability must be revealed only from the "evidence adduced or conceded by the defendant and [the] plaintiff's evidence which permits no other reasonable inference." *Pratt v. Cudworth, supra*, at 720. From the defendant's evidence the jury could find that defendant noticed there

---

**2.** Appellant abandoned her first point on appeal. We shall treat her second point as our first.

was gravel scattered about the road approximately 60 to 75 feet ahead of him and that although he reduced his speed to no more than 50 m.p.h. he lost control of the vehicle as he headed into the curve of which he had no advance warning due to the absence of a sign or the darkness of the road. This court cannot find the defendant's actions under these conditions were negligent as a matter of law.

## II

Appellant's contention the jury's verdict was contrary to the weight of the evidence and that the trial court erred in overruling plaintiff's motion for new trial is not proper for this court's review. That remedy sits with the trial court. *Joseph v. Orscheln Bros. Truck Line, Inc.*, 609 S.W.2d 238, 240 (Mo.App.1980).

## III

The plaintiff alleges the trial court erred in refusing to allow defendant's oral admission against interest into evidence before the jury. The plaintiff attempted to elicit testimony from a witness, Sonya LaFon, a friend of the plaintiff, concerning Mr. Witt's statements to her about how the accident occurred. After an objection was made, plaintiff's attorney made the following offer of proof:

I believe she will testify that he told her he had been drinking, the wreck was his fault and she [sic] is [sic] isn't what happened, that he possibly fell asleep.

■ The trial court properly sustained defendant's objection to this testimony. In interrogatories to the plaintiff, defendant requested the identity of any person who heard Mark Witt say anything about the accident. The plaintiff failed to disclose witness Sonya LaFon's name. "The rules of discovery are designed and interpreted to aid the court and litigants in determining the facts in issue prior to trial." *Bethell v. Porter*, 595 S.W.2d 369, 377 (Mo.App.1980). The trial court's refusal to admit the testimony due to appellant's refusal to answer interrogatories as provided in Rules 56.01,

51.01 and 61.01 was proper. *Bethell, supra,* at 377.

Additionally, it cannot be said the jury was denied the opportunity to hear his admission against interest. In fact, the plaintiff testified, without objection, that "what he told me briefly was that he may have been going too fast and that it was totally his fault, and he would make sure I was taken care of." This statement as to "fault" provided the jury with the information to test the credibility of the declarant and aided them in arriving at their decision. *See Carpentar v. Davis*, 435 S.W.2d 382, 384 (Mo. banc 1968).

## IV

■ Finally, plaintiff asserts a new trial is warranted because of improper communications between the court and the jury. Plaintiff alleges a court employee made a statement to the effect the jury had "two minutes" and this comment "provoked a verdict" before the jury had concluded deliberations.

The jury began deliberating at 12:01 p.m. At 1:08 p.m. the trial court instructed the sheriff to bring the jury back into the courtroom. (The record does not indicate the reason for this decision.) The reporter noted the deputy sheriff then "[o]pened the door and the jurors said something to him about reaching a verdict." The judge responded, "that's fine then." The jury subsequently returned its verdict at 1:12 p.m.

The plaintiff submitted eight affidavits from twelve of the jurors who tried the case. The affidavits sought to impeach or explain the verdict. Defendant moved to strike them and remove them from the court file. The motion to strike the affidavits was sustained but the trial court did not rule the motion to remove them from the court file.

According to plaintiff, *State v. Cooper*, 648 S.W.2d 137 (Mo.App.1983) controls this case. Not so. In *Cooper*, a juror left the jury room and spoke with a bailiff and with the judge privately in his chambers. The trial court denied defendant's motion for mistrial as well as his motion for new trial

based on juror separation stating the juror was under "surveillance" and did not prejudice the rights of the defendant. This court reversed holding a new trial is in order where there has been juror separation and the state did not affirmatively show the lack of improper influence. This case is inapposite to the case at bar not only because *Cooper* as a criminal case is governed by § 547.020, RSMo 1978, New Trials-When Granted, but because there is no indication of improper influence or the existence of prejudicial error.

The court in *Shearin v. Fletcher/Mayo/Associates, Inc.*, 687 S.W.2d 198, 203 (Mo.App.1984) noted "[t]he threshold matter on this point is the long standing rule that a juror may not impeach the verdict as to misconduct inside or outside the jury room whether before or after the jury is discharged." The transcript does not reveal the "two minute" statement the bailiff allegedly made to the jury. In *Williams v. Yellow Cab Co.*, 11 Ill.App.2d 112, 136 N.E.2d 582, 585 (1956) the parties had agreed that if a verdict was not reached by 10:30 p.m. the jury should be permitted to separate for the night. They had been told by a bailiff in response to a question they would stay until a verdict was reached. At 10:00 p.m. a bailiff "jokingly said, 'I'm going up to get the cots.'" Shortly after 10:30 p.m. the bailiff returned to dismiss the jury and was informed they had reached a decision. The jury retired and returned the next day. They were polled and none of them repudiated their verdict. The court held "[t]he statements complained of should not have been made by the bailiffs but we find nothing to support the claim of coercion of the jury and prejudice to the defendant." *Id.*

Except for the stricken affidavits there is nothing before this court concerning the alleged jury misconduct. It would be most grievous for this court to speculate on what actually transpired. Plaintiff's point IV is denied.

Judgment affirmed.

All concur.