PER CURIAM.

JAMES O. KING, Individually and as Administrator of Estate of RHODA KING, deceased, Claimant, vs. STATE OF ILLINOIS, DIVISION OF HIGHWAYS, Respondent.

*Opinion filed April 7, 1975.*

JAMES WALKER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

Claimant's wife was killed as a result of a collision at an intersection where a village street crosses U.S. Highway 150 in the Village of LeRoy in McLean County.

The claimant, James O. King, brings this action individually and as administrator of the estate of his wife, Rhoda King, deceased. The complaint seeks damages for the wrongful death of the deceased, and for reimbursement of her medical and funeral expenses.

Claimant alleges that the proximate cause of his wife's death was the State's negligence in failing to

replace a downed stop sign within a reasonable time after having actual or constructive notice of the defect.

Respondent denies that the state had any prior notice of the downed stop sign, but bases it's denial of liability primarily on the alleged contributory negligence of claimant's decedent.

The accident occurred on October 20, 1967, at about 5:30 p.m. The deceased, Rhoda King, was driving her car south on Hemlock Street in the Village of LeRoy and, seeing no stop sign, drove her automobile onto U.S. Highway 150, without stopping, into the path of and in front of a semi-trailor truck which struck her car broadside causing Mrs. King's serious injuries from which she died three days after the accident.

Although the village streets within the Village of LeRoy are not under the jurisdiction of the State's Division of Highways, respondent did erect the numerous stop signs within the village to command all traffic on village streets to stop before entering or crossing U.S. Highway 150, the only thoroughfare running through the village. Respondent was also responsible for maintaining such stop signs, including the one on Hemlock Street, which was down at the time of Mrs. King's accident. The "Report of the Division of Highways", cited by the claimant, acknowledges the respondent's duty to maintain the stop sign, but states that it had no notice from any source that the sign was down.

It is apparent that the stop sign was down at the time of Mrs. King's accident, but it is equally apparent from the record that the respondent had no actual notice of this fact. This was confirmed by a witness for the claimant, Mr. Eugene Lyons, who was at the time of the accident the state employee who had the responsibility

for the erection and maintenance of this stop sign. This witness for the claimant stated positively that there had been no report to the Division of Highways of this sign being down prior to the accident. None of the other witnesses who had noticed the sign being down prior to the accident had reported this fact to anyone.

In the absence of any actual notice to the respondent that this stop sign was down, respondent cannot be charged with negligence in failing to replace the sign, unless the evidence shows that the respondent should be charged with constructive notice of this defect and failed to take appropriate remedial action within a reasonable length of time.

Under certain circumstances, "a lapse of time of sufficient duration to permit discovery of a defective or dangerous condition may constitute constructive notice thereof to the state. "*I.L.P. Roads and Bridges §154.* In *Dockery* v. *State (1949) 18 C.C.R. 177*, we held that there was constructive notice of a large hole that had existed for three weeks in the pavement of a state highway. In that case, it was obvious that the state should have had actual notice of such a defect in the middle of its highway.

The absence of a stop sign on a village street is not likely to be as readily noticed as a large hole in a highway. Nevertheless, we have considered the evidence as to the length of time this particular stop sign was down.

The evidence on this point is contained in the testimony of three witnesses for the claimant which is summarized as follows: William Litherland, a LeRoy resident, testified that he noticed the sign was down two or three days prior to the accident. O. J. Lere, a LeRoy

resident, testified that he and his wife noticed the sign was down the Sunday before the accident occurred on Friday, indicating that the sign was down at least six days. Junior Sigler, who was employed at the Victory Inn, located on the southeast corner of the intersection, testified that the sign had been down for three weeks prior to Mrs. King's accident. He said his attention was called to the fact that the sign was down when a truck had knocked it down.

Another witness called by claimant was one Ralph Duvick, a school teacher and editor of the village newspaper, the LeRoy Journal. He took a photograph, claimant's Exhibit 1, showing the stop sign still lying in the ditch nine days after the fatal accident. This contradicts the report of the Division of Highways which states that the stop sign was replaced on the day after the accident. Since the point has little relevancy, we need not attempt to resolve the apparent conflict by considering, as respondent suggests, that the sign may have been knocked down again by vandals after it was replaced, after the accident. Both of the LeRoy policemen testified that there had been a lot of vandalism in and around LeRoy about that time.

Mr. Duvick explained that he took the picture [claimant's Exhibit 1] which he published, "to remind people that, if they see a sign down, they should notify proper authorities." He said there had been two or three other signs knocked down in the area of this rural community.

Mr. Lyons, the state employee responsible for maintaining this stop sign and claimant's witness, described the respondent's procedures for making periodic inspections to discover such defects as a downed stop sign. He said that his maintenance crews report such defects as do

the State Police, County Police, and sometimes farmers report, "if they happen to bust one."

Both of LeRoy's policemen, Russell Builta and Robert Rice, state that they would have notified the state if they had been aware that the stop sign was down. They both said that the streets of LeRoy were patrolled every night, and that Hemlock Street, being on the outside edge of town, was patrolled at least twice every night. Yet, they had not noticed the sign being down. Neither could say positively that they remembered seeing the sign erect in the three weeks prior to the accident. Mr. Rice said he thought he would have noticed it if it had been down. He saw it down at the time of the accident.

Considering all of the above testimony in a light most favorable to the claimant, we conclude that the stop sign in question had been down for a period of three weeks prior to Mrs. King's accident. The evidence is clear that respondent had no actual notice of this fact, and we do not believe that a finding of constructive notice is justified under these facts and circumstances. If the two village policemen, who patrol the streets every day, were so oblivious to the existence or non-existence of this particular sign, it would seem unfair to impute constructive notice of the defect to the respondent for the failure of its agents and employees to discover the down sign within three weeks.

Claimant relies on the rule in *Buckley* v. *City of Chicago (1954) 3 Ill.App. 2d 39*, contending that its facts are nearly identical to those in the case at bar. Some of the facts are similar, but the significant and distinguishing difference is the length of time the stop sign had been missing from the city intersection. In *Buckley* the stop sign, required by city ordinance, had been missing for "many months." This contrasts sharply with the three

weeks the sign had been down on a less busy intersection in the village. Even so, *Buckley* did not hold the city negligent as a matter of law. It merely upheld the jury's finding of negligence under the facts and circumstances in that case. Indeed, in its discussion of questions of negligence, due care, and proximate cause, the court said in *Buckley* at page 42:

> "Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body."

Claimant also relies heavily on the ruling in *Johnson* v. *City of Moline (1949) 338 Ill.App. 220*, holding the city liable for negligence where a traffic light was knocked down, promptly removed by the city, but not replaced for a period of six days. During that 6-day period, several accidents had occurred at this busy city intersection. In *Johnson*, the city had actual notice of the traffic light the city had removed and of the dangerous condition it created. In the case at bar, unlike the facts in *Johnson*, the state had no actual notice of the downed stop sign, and the evidence as to constructive notice is weak. The instant cause further differs from *Johnson* in that here, there had been no previous accidents at this intersection.

It is not necessary for us to conclude that the respondent was in no degree negligent in this matter, since the evidence indicates that Mrs. King must be charged with some degree of negligence which contributed to her fatal accident.

This court has always followed the rule that contributory negligence on the part of a claimant [or, as here, the claimant's intestate] is a bar to recovery of

damages. The contributory negligence rule was carefully reconsidered and reaffirmed by the Illinois Supreme Court in *Maki* v. *Frelk (1968) 40 Ill. 2d 193.*

Several facts in this case preclude our finding that Mrs. King was free from any negligence that contributed to her accident.

The various photo exhibits of both parties show the view of the intersection as Mrs. King must have seen it from her approach. It can readily be observed that U.S. Highway 150, which she was approaching, is a 2-lane concrete pavement and obviously a main highway. The village street, on which she was driving, was a narrow oiled street and obviously a road of secondary importance to the highway she was approaching. We believe that, if Mrs. King were exercising due care and caution for her personal safety, she would have seen and known that she was approaching an intersection with a preferential highway even though she saw no stop sign.

An even more important fact suggesting a lack of ordinary care for her personal safety on this occasion was her appatent failure to observe the large semi-trailer truck on the highway approaching the intersection coming from the left.

The Departmental Report, filed in this cause under Rule 14, makes the following assertion:

"The driver of a southbound vehicle on Hemlock, [as the decedent was] upon approaching U.S. Route 150, has a clear and unrestricted sight distance to the east at the intersection."

This conclusion is born out by the photographs introduced by both claimant and respondent. Respondent's Exhibit C gives a particularly clear picture of Mrs. King's sight distance to her left as she approached the intersection.

It is further stated in the Departmental Report:

"The deceased, Rhoda L. King, would have had a clear view of the approaching westbound truck and had a duty to take appropriate action for her own safety."

Yet, the State Highway Police "Traffic Accident Report" offered in evidence by the claimant and also attached to the Departmental Report, states that Mrs. King "pulled into the path of Unit #2 and was struck broadside in the left side".

The decedent did not live long enough to explain why she proceeded into the path of the truck and into such obvious danger. The most plausable theory is that she failed to see the truck, even though she had an unobstructed view of the highway in the direction from which the truck was coming. Such failure to see would be contributory negligence.

We have also considered the theory that, even if she saw the truck, she might have assumed that it would yield the right-of-way to her since it was approaching on her left. We have taken judicial notice, as claimant requested at the hearing, of the provision in *Ill.Rev.Stat. (1967) Ch. 95½ §165* relating to right-of-way. We find that the statute is not applicable to the case at bar under the ruling in the similar case involving a downed stop sign, *Vierke* v. *Sunset Valley Creamery Co. (1965) 58 Ill.App.2d 323.*

Even if Mrs. King had the right of way, as she may have erroneously assumed, this does not relieve a driver from the duty to exercise ordinary care in approaching, entering and driving through the intersection. (*Waldren* v. *Hardwick, (1968) 99 Ill.App.2d 36.)* Rather, as the court stated in *Conner* v. *McGrew, (1961) 32 Ill.App.2d 214:*

". . . a driver [even] on a preferential highway does not have an absolute or unqualified right-of-way that can be asserted regardless of circumstances, distances or speed. *Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right-of-way, nor may be heedlessly proceed into obvious danger.* Rather, there is a duty upon such driver to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered, or by the exercise or reasonable care, should have been discovered." (Emphasis added)

The above rule is restated in the well known booklet, "*Illinois Rules of the Road*", as follows: [This booklet was offered in evidence by the claimant as good authority for claimant's assertion that traffic signs and signals are of utmost importance.]

"It must be understood that, in *every* situation, the right-of-way is something which is to be given, not taken. If the other driver is not following the rules, let him have the right-of-way even if it really belongs to you. Otherwise, you will be gambling with the lives of yourself and your passengers." [Such gambling is negligence.]

It is well settled that a driver approaching an intersection, who fails to look as he approaches, to ascertain whether there are other cars in proximity, especially those which might have the right of way over him, is guilty of want of ordinary care and contributory negligence. *(Touhey* v. *Yellow Cab Company, (1962) 33 Ill.App.2d 180.)*

There is considerable testimony in the record which attempts to cast some light on the probable reasons why Mrs. King drove into the path of the truck as she did, other than the fact that the stop sign was down. It is unnecessary to comment on this evidence since the inferences that could be drawn would not be conclusive and would not alter the decision in this case.

Mrs. King was an experienced driver with a good driving record, according to claimant's testimony. Yet, on this particular occasion, the weight of the evidence shows that she was negligent and that her negligence contrib-

uted to her fatal accident. Hence, this claim must be and is hereby denied.