ROBERT DUEWEL *et al.*, Plaintiffs, *v.* LLOIL LAHMAN *et al.*, Defendants-Appellants.—(KATHRYN DUEWEL, Plaintiff-Appellee.)—(CAROL LAHMAN, Plaintiff-Appellee, *v.* THE COUNTY OF KANE, Defendant-Appellant.—(LLOIL LAHMAN, Plaintiff-Appellant.))

Second District    No. 81-144

Opinion filed December 29, 1981.

Robert Morrow, State's Attorney, of Geneva (Linda Soreff Siegel, Assistant State's Attorney, of counsel), for appellant County of Kane.

George P. Lindner, of Aurora, for appellants Carol and Lloil Lahman.

John P. Callahan, of Geneva, for appellee Kathryn Duewel.

JUSTICE UNVERZAGT delivered the opinion of the court:

Robert and Kathryn Duewel were driving north on Randall Road in Kane County about 7 p.m. on August 30, 1978. Lloil and Carol Lahman were driving east on McDonald Road, also in Kane County, at about the same time. Both couples were in their fifties; the weather was sunny and dry. The vehicles driven by the two men collided in the northbound lane of Randall Road where it intersects McDonald, the Duewels' Mercury striking the right rear side of the Lahmans' camper/van. The stop sign

normally located on McDonald at the southwest corner of the intersection was missing, as was the "Stop Ahead" sign which would have been located on McDonald a distance to the west of the stop sign. The personal injury action brought by the Duewels against Lloil Lahman and the County of Kane, and the cross-claim brought by the Lahmans against the County of Kane were consolidated for trial. Robert Duewel was later allowed to withdraw as a plaintiff. Several amended complaints were filed, and motions to strike and dismiss filed by the county were denied.

A jury awarded judgment for plaintiff Kathryn Duewel against defendants Lahman and the County of Kane in the amount of "$27,500 each." The jury awarded $10,000 to Carol Lahman against the County of Kane, and $75,000 to Lloil Lahman against the County of Kane. It also answered in the affirmative a special interrogatory on the issue of Lloil Lahman's contributory negligence. Following post-trial motions, the trial court entered a $55,000 judgment for Kathryn Duewel jointly against defendants Lahman and the County of Kane and a $10,000 judgment for Carol Lahman against the County of Kane. Also, because a special interrogatory supersedes a general verdict, the trial court vacated the $75,000 judgment for Lloil Lahman against the county. The County of Kane appeals the trial court's denial of its motions for directed verdicts and judgment *n.o.v.* and the denial of its motion to strike and dismiss the complaint. Lahman appeals from the jury's verdicts finding him guilty of negligence and contributory negligence, and from the denial of his post-trial motion.

At the outset we note the comparative negligence doctrine adopted in Illinois in *Alvis v. Ribar* (1981), 85 Ill. 2d 1 was not applicable to the instant case since the verdicts were returned prior to June 8, 1981, which was the effective date of the comparative negligence doctrine.

We now address ourselves to the issues raised in the Lahman appeal. He contends the jury's verdict against him as a defendant that he was negligent and its finding that he was contributorily negligent as cross-plaintiff were against the manifest weight of the evidence. The evidence was that Lahman was familiar with Randall Road and had even driven on it earlier in the evening. He was not familiar with McDonald Road, however, but testified he felt he was on a preferred highway. The last stop sign for eastbound traffic on McDonald was about 3½ miles west of Randall Road at Corron Road. Lahman testified he did not recall the stop sign at Corron Road, nor the two stop signs before that one, but his wife testified they stopped for each stop sign. Traffic on several side streets intersecting with McDonald was stop-sign controlled. McDonald was a gravel road at the point Lahman first began traveling eastward on it, but it was paved for the majority of the distance he drove on it. McDonald Road was approximately 20 feet wide; Randall was 24 feet wide, also

paved. Lahman testified he saw Randall Road when he was about 100 feet away from the intersection, but that he did not specifically remember physically looking to the left or right or slowing down as he entered the intersection. He did not see the back of the opposing stop sign on McDonald across Randall Road. His wife testified that after the accident he had stated to a police officer that he was traveling about 55 miles per hour; his own earlier testimony was that he was going 30 to 35 miles per hour before the impact and at the time of the impact. Speed limits on both Randall and McDonald are 55 miles per hour. Neither he nor his wife observed any cars precede the Duewel car through the intersection, although there was testimony that two cars were traveling ahead of the Duewel car on Randall. He was driving a van, which testimony indicated would have placed his line of vision at about 5.54 feet up from the pavement whereas the line of vision in a passenger car is about 3.9 feet above pavement level. There was no evidence of sight obstructions which would have prevented him from seeing oncoming traffic on Randall. No skid marks were found at the accident scene; Mrs. Lahman testified they were about half way across Randall Road when they saw the Duewel car just before the impact.

When encountering an open intersection, a statutory duty is imposed on the driver of the vehicle to the left to yield the right-of-way to the driver on the right. (Ill. Rev. Stat. 1979, ch. 95½, par. 11—901(a).) This same duty is likewise imposed where the stop sign is missing, thus rendering the intersection an open one. (*Carr v. Shirland Township* (1978), 66 Ill. App. 3d 1033, 1036.) Even if Lahman felt that he was on a preferred highway, there was clear testimony he was unfamiliar with that road; he did not know if it was such a highway. Although Lahman did not remember stopping, there was evidence McDonald Road traffic is stopped at three intersections to the west of its intersection with Randall. Although the testimony is not clear on this point, it appears that a number of subdivision streets which intersect McDonald and which were stop-sign controlled were "T" intersections rather than cross intersections. Under the circumstances and pursuant to statute, Lahman should have been prepared to yield to traffic from the right if necessary. The evidence that he did not see the Duewel car until just before it hit his van and the fact that no skid marks were found lead to the conclusion that he did not look to the right as he approached the intersection or that under the circumstances he was traveling too fast when he entered the intersection.

*Smith v. Godin* (1978), 61 Ill. App. 3d 480, cited by Lahman, is distinguishable. Although the defendant there was found not to be negligent as a matter of law, the evidence was that she had been through the intersection two or three times in the preceding six-month period and she had never observed a stop sign. Also, contrary to the instant facts,

both parties in that case testified they kept a proper lookout for other traffic, and there were no inconsistencies in their testimony that they were traveling below the posted speed limit. *Lesperance v. Wolff* (1979), 79 Ill. App. 3d 136, is also distinguishable. The court there found the jury's verdict that the plaintiff was contributorily negligent was manifestly unreasonable in view of the fact he would have had only one-to-two seconds to take the evasive action necessary to have avoided the accident. In the instant case, Lahman failed to exercise the necessary reasonable care before there was any need for evasive action. The jury expected Lesperance to exercise an impossible standard of care. Lahman, on the other hand, was only expected to exercise the standard of care of a reasonable person on an unfamiliar road.

■■ We conclude the jury's findings of negligence and contributory negligence were not against the manifest weight of the evidence.

Lahman next contends the jury's verdict and answer to the special interrogatory were against the manifest weight of the evidence because his conduct was not the proximate cause of the injuries; rather, it was the failure of the county to replace the stop sign which was the proximate cause. (See *Buckley v. City of Chicago* (1954), 3 Ill. App. 2d 39, and *Johnston v. City of East Moline* (1950), 405 Ill. 460, wherein the cities' negligence in failing to maintain respectively a stop sign and traffic signals was held to be the proximate cause of the plaintiffs' injuries.) In its appeal, the county also raises the proximate cause issue, contending its action could not have been the proximate cause because it had no duty to the plaintiffs since there was no actual or constructive notice of the defect. See *Wilsey v. Schlawin* (1976), 35 Ill. App. 3d 892, wherein the court held the evidence failed to establish the public entity had the statutorily required notice, consequently no duty could have been breached, and no liability obtained, therefore the entity's actions were not the proximate cause.

In the alternative, the county argues that even if it did have a duty to the plaintiffs, its actions were not the proximate cause, but merely created a condition making an injury possible. (See *Carr v. Shirland Township* (1978), 66 Ill. App. 3d 1033, wherein the court held the facts stated in the complaint were insufficient to state a cause of action against the township since its allegedly negligent act merely furnished a condition making the plaintiff's alleged injuries possible and were not the proximate cause thereof.) The following discussion is a joint consideration of the issue of proximate cause in light of both Lahman's and the county's appeal.

In order for a negligent act to be the proximate cause of an injury,

> "[t]he injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur

as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act." *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380.

■■ The negligence of a defendant will not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 111-12.) Stated another way, the intervention independent concurrent or intervening forces will not break the casual connection if the intervention of such forces was itself probable or foreseeable. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 381.) There may be more than one proximate cause of an injury. (*Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 23.) "Where injury or damage is caused by the concurrent negligence of two persons and the accident would not have occurred without the negligence of both, the negligence of each is the proximate cause of the injury or damage." *Naslund v. Watts* (1967), 80 Ill. App. 2d 464, 470.

Our review of the record here causes us to conclude that the negligence of both Lahman and the County of Kane caused the accident, therefore, the negligence of each is the proximate cause. In so concluding, we necessarily reject the county's argument that it had no duty because it lacked either actual or constructive notice that the sign was missing in sufficient time to replace it. Its contention in this regard was based on section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 3—102). That section provides in pertinent part:

"(a) * * * [A] local public entity * * * shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time * * * to have taken measures to remedy or protect against such condition.

(b) A public entity does not have constructive notice * * * if it establishes either:

(1) The existence of the condition and its character of not being reasonably safe would not have been discovered by an inspection system that was reasonably adequate * * *; or

(2) The public entity maintained and operated such an inspection system with due care and did not discover the condition." Ill. Rev. Stat. 1979, ch. 85, par. 3—102(a)(b).

■■ It has been conceded that the county had no actual notice of the defect. The three witnesses who testified they saw the sign down during

the day of the accident did not report it. Further, the police activity log for the day before and the day of the accident shows no report of the missing stop sign until 7:47 p.m. when the accident was reported. The County Highway Department was advised, and the sign was replaced at approximately 10 p.m. that evening. Generally, whether a defect has existed a sufficient length of time prior to the injury for the public entity to be deemed to have constructive notice is a question of fact for the jury. *Livings v. City of Chicago* (1975), 26 Ill. App. 3d 850.

The county argues the evidence failed to show either (1) knowledge of the defect on the part of any county agency that could have been imputed to the county, or (2) failure of the county to exercise reasonable care in inspecting for missing traffic control signs, or (3) knowledge of the defect on the part of the county due to the mere passage of time. The county relies heavily on *Wilsey v. Schlawin* (1976), 35 Ill. App. 3d 892, in support of its position that the county had no notice of the defect by virtue of mere passage of time and that, as a matter of law, the 8½ hours the sign was missing was too short a period of time for notice to be imputed. We find *Wilsey* eminently distinguishable from the case at bar, however. The *Wilsey* court disregarded evidence in an improperly admitted police report that the stop sign had been knocked down two days before the accident. Thus, the only other evidence of notice was the testimony of the public works superintendent that the sign was up the day before the accident. The court there found:

> "On the basis of this testimony, which was unrebutted, we fail to see how the Village knew or should have known that the stop sign was inoperative in sufficient time to take remedial measures." 35 Ill. App. 3d 892, 896.

Our review of the record in the case at bar shows there was considerably more evidence presented here, not wholly rebutted by the county, which, if believed by the jury, was sufficient to show actual knowledge of the defect on the part of county employees which could thereby be imputed as constructive notice to the county. (See *Doyle v. Teas* (1843), 5 Ill. 202, 243 (actual notice to an agent is constructive notice to the principal).) One of the witnesses subpoenaed by plaintiff Duewel who testified the sign was missing at about 2 or 3 p.m. on the day of the accident, also testified he saw at least one big tractor mower, possibly more than one, mowing the grass on the shoulder along Randall Road at McDonald. There was also testimony from the County Highway Maintenance foreman that only Kane County was responsible for mowing this area of grass, and that usually four tractor mowers are used when mowing, two mowers on each side of the road. Although the county characterizes the maintenance foreman's testimony as "completely rebut-

ting" the testimony of this witness, we find the record reflects the foreman's testimony was very general and ambiguous in nature, and conclude that the task of assessing the credibility of the witnesses and the weight to be assigned to their testimony belonged to the jury.

■■ ■ In essence, the foreman's testimony was that he believed the "second mowing" of the season began on August 9, 1978; that Randall Road is "one of the first roads we mow"; that "Randall Road would be mowed in approximately three or four days after we start mowing"; and that "the only thing we would have [to show whether or not grass was cut on a particular day such as August 30, 1978] is our mowing policy" which "is set up with the Conservation Department, and we mow the same roads every year in the—I would say in the same sequence." In our view, this testimony could easily have been construed by the jury as reflecting the usual or normal procedures adhered to by the county and thus not conclusive on the question of whether the county mowing crew was present at the intersection on the day in question. We believe the evidence was sufficient to allow the jury to conclude that the county had constructive notice of the defect. Further, the evidence justified a finding by the jury that the defect was discovered in sufficient time to allow the county to remedy the defect. The maintenance foreman testified that the highway department employees receive written instructions regarding signs that are down or missing. Under these instructions, the employees are instructed to watch specifically for stop signs that are down and, if one is encountered, to either repair it *immediately* or *wait there and flag traffic until someone can get out with the material to repair the sign.* (Emphasis ours.) Thus, the "sufficient time" necessary to remedy the defect, or to prevent injury therefrom, was negligible since immediate repair or at least warning to motorists was possible and, in fact, *written* highway department policy. Additionally, the county presented evidence showing that the inspection and maintenance work performed by its one-man sign crew in patroling 330 miles of county roads was supplemented by the highway crews, the sheriff's deputies, environmental and zoning department personnel, all of whom were instructed to be on the watch for signs that were down or missing. Considering this evidence in light of the testimony that Randall Road is the busiest county highway on the west side of the Fox River, that it is used frequently by county vehicles, and that the missing stop sign was undiscovered and unreported for at least 8½ hours, the jury could well have found the inspection system was reasonably adequate, that the dangerous condition therefore would have been or should have been discovered, and that the failure to so discover the defect was the result of a lack of due care in the operation of the county's inspection system. After reading the record and viewing the photographs

of the intersection, we are of the opinion that the county should have foreseen the failure of Lloil Lahman, without the benefit of the stop sign, to recognize other indications of an approaching hazard. See *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 15.

■■ Such prescience on the part of the county does not, however, relieve Lahman of liability for his own negligence. The fact he did not see the plaintiff's car until impact and the lack of skid marks at the accident scene indicate he was not aware of, nor was he prepared to yield to, traffic from the right although it was his statutory duty to be thusly aware and prepared at what appeared to be an open intersection. His unfamiliarity with McDonald Road required at least the usual amount of caution, if not more, despite his feeling he was on a "preferred" highway. He had to stop for at least three stop signs while traveling eastward on McDonald before it intersects with Randall Road. Certainly he knew, even if subliminally, that he would eventually encounter Randall Road again, since he had traveled on it earlier on his trip westward. In sum, applying either the manifest weight of the evidence or the *Pedrick* test, we believe the evidence clearly supported the jury's verdict that both Lahman and the County of Kane were negligent. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.

Lahman also requires this court to reconsider its position expressed in *Jenkins v. Bobrowicz* (1981), 97 Ill. App. 3d 526, and, citing the appellate court's opinion in *Albaugh v. Cooley* (1980), 88 Ill. App. 3d 320, urges the special interrogatory be set aside inasmuch as it is unconstitutional. *Jenkins*, decided by this court prior to the supreme court's review of the appellate decision in *Albaugh*, found section 65 of the Civil Practice Act was constitutional. (Ill. Rev. Stat. 1979, ch. 110, par. 65.) That section provides:

> "§65. Verdict—Special interrogatories. Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly."

■■ The supreme court's opinion later issued in *Albaugh* found it unnecessary to consider the constitutionality of section 65, since it observed it has long held that " '[t]he generally prevailing rule is that an inconsistent

special finding controls a general verdict, even in the absence of express statutory provision.' " (*Albaugh v. Cooley* (1981), 87 Ill. 2d 241, 251-52.) No reconsideration of this court's decision in *Jenkins* is warranted.

■■ Lahman next asserts the county's counsel was allowed to improperly ask the deputy who had responded to the accident call whether any tickets were issued as the result of the accident. The record indicates, however, that Lahman did not object to this line of questioning, although plaintiff Duewel did, and the objection was sustained. Further, Lahman's counsel himself later asked the officer whether he issued a ticket to Lahman in such a manner as to suggest to the jury that a ticket had not been issued. An objection by the county to this question was sustained, however, before the officer actually answered. In our opinion, Lahman has waived this issue due to his failure to object, and no reversible plain error cognizable under Supreme Court Rule 615(a) is apparent. Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

The jury's original verdict for Duewel against defendants Lahman and the County of Kane recited judgment was in the amount of "$27,500 each." This judgment was later modified by the trial court after post-trial motions to $55,000 jointly against the defendants. Lahman argues it is well established that the jury is not to apportion damages between defendants sued jointly. Further, he argues that it is unclear whether the jury meant to award $27,500 or $55,000. Thus, he asserts it was error for the trial court to make the judgment a joint one for $55,000 and that remandment for a new trial is warranted under the authority of *Michels v. Bezley* (1957), 12 Ill. App. 2d 456, and *Stoewsand v. Checker Taxi Co.* (1947), 331 Ill. App. 192. Notably, defendant County of Kane does not challenge the modification of the award. Plaintiff Duewel argues the court acted within its authority in entering the joint judgment for $55,000, citing *Evans v. Nixon* (1974), 16 Ill. App. 3d 312. Although section 50(5) of the Civil Practice Act authorizes the court to correct a jury verdict to conform to its intent (Ill. Rev. Stat. 1979, ch. 110, par. 50(5)), we agree with Lahman's assertion that the trial judge acted improperly in entering a joint judgment against the defendants for $55,000. The record shows the verdict form signed by the jury read as follows:

"We, the jury, find in favor of the plaintiff KATHRYN DUEWEL and against both defendants.

We assess plaintiff's damages in the sum of $27,500 each."

■■ It thus appears that the jury's emphasis was not on assessing the plaintiff's damages but, rather, its emphasis was on the degree of liability of each of the defendants. Such an attempt to apportion was clearly improper. Had the jury not felt compelled *sua sponte* to apportion the liability between the two defendants, plaintiff's damages may have been

assessed much differently. For this reason, we conclude the cause must be remanded for a redetermination of plaintiff Duewel's damages.

The county raises a third issue in addition to those discussed above along with the issues raised by Lahman. This is, whether the court erred in denying its motions to strike and dismiss the complaints for their failure to state a cause of action against the county. Its contention in this regard is based on the failure of the complaint to allege filing of the statutorily required notice to the County Superintendent of Highways and the State's Attorney. (Ill. Rev. Stat. 1979, ch. 121, par. 383.) When the requisite notice is not served, the action is barred. (Ill. Rev. Stat. 1979, ch. 121, par. 384.) If the superintendent cannot be liable, the county cannot be liable:

> "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Ill. Rev. Stat. 1979, ch. 85, par. 2—109.

Plaintiff Duewel counters that the superintendent was not a named defendant, nor is there any statutory requirement that he be named individually in every suit against the county that has to do with the highways. In response, the county argues it is not the failure to name the county superintendent of highways as a defendant that bars the action, it is the failure to serve him with notice that bars the action. The county's argument is patently without merit. The statute only requires notice when any civil action is about to be commenced "against any County Superintendent of Highways." (Ill. Rev. Stat. 1979, ch. 121, par. 383.) The instant suit was not filed against the superintendent; it was filed against the county, and the county does not contend that notice to it was in any way deficient.

Accordingly, the judgment of the circuit court of Kane County for Kathryn Duewel jointly against the defendants for $55,000 is reversed and remanded for a redetermination of damages; the judgment for Carol Lahman for $10,000 is affirmed; and the judgment setting aside the $75,000 verdict for Lloil Lahman is affirmed.

Judgment affirmed in part and reversed and remanded in part.

HOPF and VAN DEUSEN, JJ., concur.