**DISTRICT OF COLUMBIA, Appellant,**

**v.**

**Consuella FREEMAN, for herself and as guardian of Ronald Smith, Appellee.**

**No. 82–1380.**

District of Columbia Court of Appeals.

Argued Oct. 25, 1983.

Decided May 15, 1984.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Washington, D.C., at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the briefs, for appellant. William J. Earl, Jr., Asst. Corp. Counsel, Washington, D.C., also entered an appearance for appellant.

Gerald P. Greiman, Washington, D.C., with whom Edward Greensfelder, Jr., and Marc D. Joseph, Washington, D.C., were on the brief, for appellee.

Before KERN, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

On April 10, 1979, six year old Ronald Smith was struck—while walking in a crosswalk—by a car driven by David Tapscott. In a subsequent action for damages, the District of Columbia was joined as a party defendant.[1] This appeal stems from the jury's finding, by general verdict, in favor of Ronald's mother, the appellee, against the District. Two theories of liability were considered by the jury: (1) The absence of a sign warning of the approaching crosswalk was alleged to ahve proximately caused Ronald's injuries. (2) The District's knowing failure to install appropriate traffic signals—in addition to or instead of the crosswalk—at a hazardous intersection allegedly was the proximate cause of Ronald's injuries.

We hold that appellee's proof was insufficient to allow submission of these theories to the jury. The trial court, therefore, erred in denying the District's timely motions for directed verdict and judgment n.o.v. We reverse.

I–A.

Ronald Smith and his brother, Andre, were returning home from school on the afternoon of April 10. The weather was sunny and dry. Traveling west, the brothers crossed the north-south Kenilworth Avenue expressway via a pedestrian bridge, which traversed the expressway near Douglas Street. The bridge was authorized for construction in 1956, and it deposited pedestrians on the west side of Kenilworth Avenue on a traffic island situated between the expressway and an access road, which branched off from the expressway. A crosswalk was painted across the access road.[2] A warning sign, which normally stood approximately two hundred feet before the crosswalk, had been down for over a year prior to the accident.[3]

1. The other defendants are not parties to this appeal so we do not discuss their cases.

2. The crosswalk was approximately 236 feet from where automobiles existed the expressway. The crosswalk had been painted initially in 1965, and was repainted one month prior to the accident.

3. The sign was described at trial as "a yellow diamond shaped sign with pedestrians ... on it ... holding hands crossing." The sign was posted initially in 1960.

As Ronald and Andre entered the crosswalk, they saw a car approaching from the expressway. Andre continued across, but Ronald returned to the traffic island at the base of the pedestrian bridge. The car, driven by Larry Philpott, stopped at the crosswalk in the left (east) lane. Andre called for Ronald to cross. The testimony conflicted as to whether Philpott waved Ronald across.[4] In any event, Ronald ran into the crosswalk, past Philpott's car, and was struck by David Tapscott's car.

Tapscott testified that he was a resident of the neighborhood, and therefore had used the access road countless times. He was aware that children frequented the area,[5] and knew that a pedestrian bridge and crosswalk controlled the traffic at Douglas Street. Tapscott recalled that he had pulled off the expressway, onto the access road, and had observed that Philpott's car was stopped at the crosswalk.[6] He claimed that he had stopped behind Philpott's car, in the left lane, and then had pulled around to the right in order to proceed through the intersection. As he entered the crosswalk his vehicle struck Ronald, who had darted in front from the left. Tapscott claimed that, although he was driving very slowly, he did not see Ronald until it was too late.[7]

Additional eyewitness testimony was offered at trial. Ronald's brother, Andre, agreed that Tapscott's car had pulled around from behind Philpott before entering the crosswalk. Denise Butler, a passenger in Tapscott's car, also corroborated Tapscott's story. Larry Philpott testified that he saw Tapscott's car exit from the expressway at a speed of thirty-five to forty miles per hour; he also recalled that Tapscott was in the left lane. The only entirely contrary testimony was provided by Larry's brother, Caesar, a passenger in the Philpott car,[8] who said that he saw Tapscott exit the expressway, on the right, and that Tapscott did not stop or slow down prior to entering the crosswalk.

Ronald's injuries, a fractured right femur and minor abrasions, were consistent with testimony that Tapscott was driving slowly through the crosswalk. The impact did not push Ronald from the crosswalk, and no tire marks evidenced a sudden stop from a high speed.

B.

The District conceded that its failure to restore the downed warning sign was negligent; the question was whether appellee's evidence, as recounted above, was sufficient to sustain a jury's reasonable conclusion that the negligence proximately caused Ronald's injuries. The trial court's ruling notwithstanding, we think that appellee did not establish proximate cause. The theory of liability stemming from the missing warning sign should not have been sent to the jury.

The court correctly instructed the jury that proximate cause is established

> when it appears from a preponderance of the evidence that the act or omission played a substantial part in bringing about the injuries or damages. Moreover, it must be shown that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

4. Philpott denied waving Ronald across, but Andre testified that he saw Philpott do so.

5. In his pretrial deposition, Tapscott stated that he frequented the area at night, when few pedestrians were in the vicinity. At trial, Tapscott testified that, additionally, he was aware that children were in the area during the day.

6. Tapscott thought that the driver of the stopped car was talking to someone standing on the traffic island.

7. Tapscott testified that he stated mistakenly at his pretrial deposition that he had not pulled around Philpott's car because he was already in the right lane.

8. The Philpott car was crowded. An adult and child sat in the front seat next to Larry; Caesar sat in the back with his baby son on his lap.

*See* Standardized Civil Jury Instructions for the District of Columbia, No. 5.11 (Rev. ed. 1981). Proximate cause encompasses both foreseeability of injury, *District of Columbia v. Cassidy,* 465 A.2d 395, 399 (D.C.1983); *Rieser v. District of Columbia,* 183 U.S.App.D.C. 375, 392, 563 F.2d 462, 479 (1977), *modified on other grounds,* 188 U.S.App.D.C. 384, 580 F.2d 647 (1978), and the decision that liability will not attach unless the breach of duty has a substantial and direct causal link to the plaintiff's injury. *Lacy v. District of Columbia,* 424 A.2d 317, 319 (D.C.1980); *District of Columbia v. North Washington Neighbors,* 367 A.2d 143, 149 (D.C. 1976), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977).[9] Normally, the existence of proximate cause is a question of fact for the jury. *McCoy v. Quadrangle Development Corp.,* 470 A.2d 1256, 1259 (D.C.1983); *Spain v. McNeal,* 337 A.2d 507, 509–10 (D.C.1975). The question becomes one of law, however, when the evidence adduced at trial will not support a rational finding of proximate cause. *District of Columbia v. Cassidy, supra,* 465 A.2d at 397–98. Such was the case here.

Appellee's evidence, viewed in its most favorable light, simply could not allow the jury to conclude reasonably that the warning sign's absence played a central role in the incident.[10] No evidence hinted that Tapscott was unfamiliar with the general area or did not know of the crosswalk's existence. In fact, there was uncontradicted testimony to the contrary. No evidence suggested that Tapscott's view of the crosswalk was blocked, or that he was otherwise distracted. Again, the manifest weight of the evidence opposed such a finding. The day was bright, the pavement was dry, and Tapscott testified that as soon as he exited the expressway, he saw Philpott's car stopped ahead at the intersection. The evidence established neither the apparent need for an early warning, nor that the absence of a warning caused Tapscott to hit Ronald. In this situation, proximate cause was lacking as a matter of law. *See Atkinson v. County of Oneida,* 59 N.Y.2d 840, 842, 464 N.Y.S.2d 747, 748, 451 N.E.2d 494, 495 (1983) (absence of warning lights and sign not proximate cause of crash because driver familiar with intersection); *Mitchell v. Poullard,* 422 So.2d 713, 715 (La.App.1982) (when both drivers familiar with intersection, failure to post signs not cause of collision); *Munson v. State,* 96 Idaho 529, 531–32, 531 P.2d 1174, 1176–77 (1975) (failure to erect highway construction warning signs not cause of collision when visibility unhindered, pavement dry, and signs would not "have provided more notice of the blocked highway than did the obvious blockage itself."); *cf. Bradwell v. Illinois Central Gulf R.R. Co.,* 562 F.2d 561, 563 (8th Cir.1977) (motorist familiar with railroad crossing; jury reasonably found driver's negligence proximate cause of collision, rather than railroad's failure to erect warning sign). The cases cited by appellee do not persuade us to the contrary.[11]

This case is distinguishable from *Wagshal v. District of Columbia,* 216 A.2d 172 (D.C.1966). In *Wagshal,* two vehicles collided at an intersection which was normally

9. In this sense, proximate cause bears a resemblance to cause in fact. This latter element of a prima facie negligence case requires a plaintiff to introduce

> evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result.

W. Prosser, Law of Torts § 41, at 241 (4th ed. 1971).

10. Because of this, we express no opinion as to whether Ronald's injuries were a foreseeable consequence of the sign's absence.

11. *Kirby Lumber Corp. v. Yarbrough,* 425 S.W.2d 709 (Tex.Civ.App.1968), and *Rugg v. State,* 284 A.D. 179, 131 N.Y.S.2d 2 (1954), do not support appellee's position. Both cases can be read to impose liability for failure to post warnings only because the motorists were otherwise unfamiliar with either the general area, or the particular hazard created by the defendant. *See also Koester v. State,* 90 A.D.2d 357, 362–63, 457 N.Y.S.2d 655, 659 (1982).

controlled by a stop sign. The District had received notification, prior to the collision, that the stop sign was missing. *Id.* at 173. In affirming the judgment against the District, the court concluded that a jury could have reasonably found that the "collision was the natural and probable consequence of the failure to repair the stop sign." *Id.* at 175 (citing *Johnston v. City of East Moline,* 338 Ill.App. 220, 87 N.E.2d 22 (1949) (damaged traffic light), *aff'd,* 405 Ill. 460, 91 N.E.2d 401 (1950)).

We think that *Wagshal*'s holding is best understood in light of what purpose the stop sign would have served if it had not been missing at the time of the collision. The stop sign, referred to by the court as a "traffic *control* device" (emphasis added), would have placed approaching motorists under a legal duty to stop at the intersection. It was in this sense that the stop sign controlled traffic. This being the case, the court could conclude logically that the sign's absence was a substantial factor leading drivers to continue unimpeded through the intersection and hence, causing the collision. *Compare Reidling v. Wickes Lumber & Building Supply,* 471 S.W.2d 319, 321 (Ky.1971) (downed stop sign not proximate cause of crash because driver had statutory duty to stop even in sign's absence).

In our case, the missing sign had no independent legal significance. The sign did not control traffic. The crosswalk *itself,* rather than any sign, established Tapscott's duty to stop. *See* 18 DCMR, *Vehicles and Traffic* § 2303.1 (April 1981).[12] On these facts, therefore, the sign's absence was not a substantial or direct cause of Tapscott's driving behavior.[13] Thus we conclude that the court erred in submitting this issue to the jury. *See District of Columbia v. Cassidy, supra,* 465 A.2d at 400.

## II–A.

The second theory of liability presented to the jury[14] was that the District's negligent failure to increase pedestrian protection at the intersection left the area unduly dangerous, and that this "defect" proximately caused Ronald's injuries. Several witnesses testified in support of this theory; appellee attempted to establish that the intersection was dangerously defective and that the District had notice of this fact.

Frank Hilton, a neighborhood resident, related that people in the area had been "trying and trying to get a stop sign" at the intersection for many years. Kim Gray, a person active in the community, testified that "[a]ccidents had been occurring at Kenilworth and Douglas," and that

12. The regulation provides:

> When traffic control signs or signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way, slowing down or stopping if needed, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway on which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.

It is undisputed that Ronald was struck while in a crosswalk. *Id.* § 9901 defines "crosswalk" as:

> That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs, from the edges of the traversable roadway; OR any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.

13. We do not discount the principle that, in a particular case, a plaintiff may prove that more than one negligent act or omission proximately caused the injury. *Hill v. McDonald,* 442 A.2d 133, 137 (D.C.1982); *see, e.g., Duewel v. Lahman,* 103 Ill.App.3d 220, 226, 58 Ill.Dec. 630, 635, 430 N.E.2d 662, 667 (1981) (driver and government liable; former carelessly entered intersection and latter failed to repair downed stop sign); *Willis v. Everett,* 359 So.2d 1080, 1084, 1086 (La.App.1978) (same). Here, however, the paucity of facts adduced by appellee, and legal insignificance of the warning sign, persuade us to hold that the District's negligence played no significant role in this incident.

14. The District's directed verdict motion was granted as to appellee's third theory of liability: the pedestrian bridge was negligently designed in that it did not reach across the access road.

she brought this to the attention of District officials between 1978 and 1979.[15] The testimony also suggested that petitions had been forwarded to the District's Department of Transportation asking that a stoplight or crossing guard be posted at the intersection.[16]

Willie Hardy, a member of the Council of the District of Columbia from 1975 to 1981, stated that she twice visited the intersection. In 1974 she visited the site and met with area residents, police officers, and District officials. Hardy recalled that during this meeting "we talked about how dangerous [the intersection] was and how many persons had had accidents, accidents had taken place there." She asserted that the meeting had been convened because "[a] young man had been hit there with traffic coming off the highway and as a result of that had died." She offered no specifics of the incident, however. In August 1979 Hardy again visited the intersection, and spoke about it to Douglas Schneider, then Director of Transportation. She remembered Schneider telling her that the intersection "was poor planning and certainly a hazard to persons crossing ... since that walk is a very short distance from where automobiles exit." [17]

Schneider, who is an attorney, testified briefly for appellee. Counsel asked him to recall his own visit to the pedestrian bridge, and to recount for the jury what his opinion of the intersection was at the time. Although Schneider has no technical knowledge pertaining to traffic engineering, design, or highway safety, the court permitted, over objection, his answer. Schneider asserted that

> [I]t would be safer from a pedestrian's point of view if the crosswalk which carried pedestrians across the main roadway of Kenilworth Avenue, the high speed lanes, ... had been designed to cover all of the roadway so that the pedestrians would be carried over the entire roadway including the little [access] roadway as well as the high speed lanes.
>
> * * * * * *
>
> My feeling was that it should have been all the way across so that the pedestrians would not have had to go into the roadway at all.

B.

In a negligence action such as this, appellant's notice of the asserted dangerous condition, prior to injury, is a fact which must be established. *Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982). Based upon appellee's evidence, we assume that notice was served. The District was apprised, on several occasions, that there may have been a problem at Kenilworth and Douglas. A boy was killed in the intersection. Meetings with area residents and city officials were convened to discuss the matter. Petitions were sent requesting action.

The existence of prior notice, however, does not compel affirmance. Appellee shouldered the additional burden of proving that the crosswalk—a traffic control device—was insufficient to protect pedestrians to the extent that the intersection could be characterized as unduly hazardous or defective. *See id.* For only upon such a showing could it be said by a reasonable jury that the District had shirked its responsibility, which it owed to Ronald, to maintain its streets in reasonably safe condition. *See District of Columbia v. Caton,* 48 App.D.C. 96, 106 (1918); *District of Columbia v. Sullivan,* 11 App.D.C. 533, 541 (1897).

It is apparent that appellee recognized the need to introduce evidence that

15. During cross-examination, Gray admitted that she was personally aware of only one pedestrian death at the intersection, which occurred in 1974. She could not recount the circumstances surrounding the death, however.

16. Copies of the petitions were not offered into evidence.

17. A hearsay objection to this testimony was overruled by the trial court.

the intersection was in fact unreasonably dangerous. The jury learned that a pedestrian had been killed in the area;[18] District officials testified that, in their view, the intersection was dangerous. After appellee rested her case, the trial court held, in denying the District's directed verdict and judgment n.o.v. motions, that expert testimony was not required to support a reasonable jury finding of unreasonable dangerousness. We hold that the trial court erred in this respect. This theory of liability should not have been sent to the jury.

The principles applicable to this aspect of the case are not new. Expert testimony must be presented at trial when the matter to be determined is " 'so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.' " *District of Columbia v. White,* 442 A.2d 159, 164 (D.C.1982) (quoting *Hughes v. District of Columbia,* 425 A.2d 1299, 1303 (D.C.1978), and *District of Columbia v. Davis,* 386 A.2d 1195, 1200 (D.C.1978)).[19] The jury may evaluate the facts without expert assistance only if the ultimate issue is " 'within the realm of common knowledge and everyday experience.' " *Id.* (quoting *Matthews v. District of Columbia,* 387 A.2d 731, 734–35 (D.C.1978)). The District has consistently argued, and we are persuaded, that whether a painted crosswalk is sufficient to render a particular intersection reasonably safe is a determination essentially technical in nature, based upon an expert evaluation of vehicular and pedestrian traffic patterns, design feasibility, cost effectiveness, and related variables.

Appellee placed into evidence aerial photographs, diagrams, and dimensions of the intersection. There were references that a school was located nearby, and that children frequented the area. But the fatal flaw in appellee's presentation was the lack of expert testimony from traffic engineers, designers, or highway safety experts, placing the evidence in an appropriate context for the jury.[20]

*Westinghouse Electric Corp. v. Nutt, supra* note 20, is dispositive. In that case, plaintiffs failed to introduce technical evidence supporting their claim that the defendant had negligently designed and maintained an elevator. *Id.,* 407 A.2d at 608. A safety consultant had testified that the elevator was dangerous, but he conceded later that he knew nothing about the elements considered in determining whether certain safety features could be incorporated. *Id.* at 609, 611. We found his testimony insufficient to support a jury finding of unreasonable danger. *Id.* at 612.

As in *Westinghouse Electric Corp.,* we think that the question of defective design in this case was one "beyond the ken of the average layman." Traffic engineering, design, and highway safety are specialized disciplines, in which practitioners use empirical tools to make informed decisions as to what type of traffic control devices will make particular intersections reasonably safe.[21] The layman, although he may cross

18. The court ruled inadmissible additional evidence of other traffic accidents at the intersection. The court found the other accidents to be irrelevant, as appellee demonstrated no similarity between the other accidents and that which occurred in the instant case.

19. This requirement serves to preclude the jury from engaging "in idle speculation which is prohibited." *Hughes v. District of Columbia, supra,* 425 A.2d at 1303 (citing *Jones v. Safeway Stores, Inc.,* 314 A.2d 459, 460–61 (D.C.1974).

20. We reject the trial court's finding, and appellee's argument, that Schneider provided whatever expert testimony was required. First, Schneider spoke about the design of the pedestrian bridge, an issue not material to the case. *See supra* note 14. Also important, Schneider has no technical background, and gave no basis for his conclusion that the bridge could be safer "from a pedestrian's point of view." Finally, the fact that the bridge could have been built *safer* did not establish that it is presently unduly dangerous. *See Westinghouse Electric Corp. v. Nutt,* 407 A.2d 606, 611 (D.C.1979).

21. *See generally* F. Hobbs, Traffic Planning and Engineering 383–418 (2d Rev. ed. 1979); J. Taylor & H. Thompson, Traffic Control and Operations 39–58 (Pt. 1) (1976); L. Pignatara, Traffic Engineering: Theory and Practice 164–75, 252–57, 291–432 (1973); D. Drew, Traffic Flow Theory and

the street regularly, does not possess the technical knowledge needed to judge the city's decision to install a crosswalk, instead of a stop sign, light, or crossing guard, at a particular intersection. Appellee cites no cases to the contrary, and the weight of authority supports the view we take here. *See, e.g., Breivo v. City of Aberdeen,* 15 Wash.App. 520, 526–28, 550 P.2d 1164, 1169–70 (1976) (traffic engineer testified that immovable barrier placed near roadway "contrary to contemporary highway safety standards"; testimony admissible as court states "we do not believe that the ordinary juror has much, if any, experience" pertinent to ultimate issue); *Fraley v. City of Flint,* 54 Mich.App. 570, 573–75, 221 N.W.2d 394, 396–97 (1974) (expert testimony required to show city set improper traffic light intervals at intersection which hampered traffic flow); *see also Oliver v. Parish of Jefferson,* 408 So.2d 275, 277–78, 280–81 (La.App.1981) (civil engineers testified about overpass design; evidence supported court finding of highway department's negligence); *Schaeffer v. Kansas Dept. of Transportation,* 227 Kan. 509, 512–15, 608 P.2d 1309, 1314–16 (1980) (safety engineers testified and traffic design manual admitted into evidence; court found defect existed).

Appellee did not present evidence sufficient to support a reasonable jury finding against the District. Accordingly, the judgment below is

*Reversed.*

CONTROL 420–47 (1968); F. HAIGHT, MATHEMATICAL THEORIES OF ROAD TRAFFIC (1960); B. GREENSHIELDS, D. SCHAPIRO & E. ERICKSEN, TRAFFIC PERFORMANCE AT URBAN STREET INTERSECTIONS 47–71 (1947).