(No. 80-CC-0296–

I.T. WEST, Executor of the Estate of Betty J. West, deceased, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 31, 1987.*

SWAIN, HARTSHORN & SCOTT (TIM SWAIN, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (MICHAEL TAYLOR, Assistant Attorney General, of counsel), for Respondent.

4

Raucci, J.

I.T. West is the duly appointed executor of the estate of Betty J. West, deceased. Betty J. West died on September 28, 1977, at the age of 44 as a result of a collision at or about the .hour of 10:00 a.m., at the intersection of Illinois Routes 121 and 98 in Tazewell County, Illinois. At the intersection, Route 121 runs north/south and Route 98 runs east/west. On the date of the collision, Route 121 consisted of two driving lanes and a separated left turn lane to the north, and two driving lanes and a separated left turn lane to the south. On the date of the collision, the speed limit for northbound and southbound traffic on Route 121 was 55 miles per hour. On the date of the collision, northbound and southbound through traffic on Route 121 was not required to stop at the intersection. Northbound and southbound traffic on Route 121 wishing to make a left turn was required to stop at a stop sign at the intersection. On the date of the collision, eastbound and westbound through traffic on Route 98 was required to stop at a stop sign before entering the intersection and at a second stop sign located in the median of the intersection. On the date of the collision, Betty J. West was driving a pickup truck eastbound on Route 98 toward its intersection with Route 121. The pickup truck was in good mechanical condition and was familiar to Betty J. West. So far as anyone knows, Betty J. West had never before attempted to cross Route 121 while traveling on Route 98. (It should be noted that nothing in the record indicates whether or not Betty J. West was, in fact, familiar with the intersection.) On the date of the collision Betty J. West stopped the pickup truck at the first stop sign on the west side of the intersection. She did not, however, stop at the second stop sign located in the median of the intersection. On the date of the

collision, Fred Swearinger was driving a tractor-trailer combination in the right-hand lane for northbound traffic on Route 121, approaching its intersection with Route 98. Mr. Swearinger was traveling between 30 and 36 miles per hour. A collision occurred between the two vehicles in Mr. Swearinger's lane of traffic. The pickup truck struck the tractor-trailer combination in the left front wheel of the tractor.

The intersection was opened to traffic in 1962, at which time there were two driving lanes to the north on Route 121 and two driving lanes and an integrated left turn lane to the south on Route 121. The speed limit on Route 121 was 65 miles per hour. Eastbound and westbound traffic on Route 98 was required to stop at a stop sign before entering the intersection. There were yield signs located in the median of the intersection for eastbound and westbound traffic on Route 98. In 1963 the yield signs in the median of the intersection were replaced with stop signs for about six months and were then changed back to yield signs. Also in 1963, larger stop signs were used to regulate Route 98 traffic entering the intersection. In 1966, a separated left turn lane was added for northbound traffic on Route 121, and the integrated left turn lane for southbound traffic was changed to a separated left turn lane. In 1967, the yield signs in the median of the intersection were changed to stop signs for both eastbound and westbound traffic on Route 98. Also in 1967 post-mounted flashing lights were placed on the east and west sides of the intersection, the posts being on either side of Route 121 on the center median island of Route 98. They were not located in the median space that one must travel through to cross Route 121. Red flashers faced east and west. Yellow flashers faced north and south. In 1973 the speed limit on Route 121 was reduced from 65 to 55, prior to any nationwide reduction. On September 28, 1977, Betty J.

West was killed at the intersection of Routes 121 and 98, being the fifteenth fatality since 1964.

It is the opinion of the Court that Betty West had a duty to yield to the Swearinger vehicle and her failure to do so precludes liability on the part of the Respondent. Betty West was under a statutory duty to yield to the Swearinger tractor-trailer which was approaching from her right. Evidence adduced at trial indicates that Betty West was traveling east at the time of the collision and Swearinger was traveling north. Therefore, the Swearinger vehicle was approaching from Betty West's right. The evidence was clear and uncontradicted that the line of sight from Betty West to Swearinger's vehicle was unobstructed. Swearinger's vehicle was between 10 and 12 feet high and over 50 feet long. It was only yards away when Betty West accelerated into the northbound lanes of Route 121. Assuming that Betty West did not see the stop sign, she must have assumed the intersection to be an open one. At an open intersection a driver has a statutory duty to yield to vehicles approaching from the right. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—901(a); *Duewel v. Lahman* (1981), 103 Ill. App. 3d 220, 224; *Carr v. Shirland Township* (1978), 66 Ill. App. 3d 1033, 1036.) Betty West breached her duty of care by entering the intersection without yielding to the Swearinger vehicle which was approaching from her right. Also, the fact that Betty West was traveling on a two-lane road preparing to intersect a divided four-lane expressway, she was on notice that "she was approaching an intersection with a preferential highway even though she saw no stop sign." (*King v. State* (1975), 30 Ill. Ct. Cl. 457, 463.) In addition, had Betty West been in the exercise of proper care for her safety, she would have seen the approaching semi-trailer rig. From the intersection itself she should have been able to see the

Swearinger vehicle with no sight obstructions. She did, however, pull into the intersection in front of the oncoming tractor-trailer. It is therefore apparent that she either failed to look for approaching traffic or that she saw the vehicle and assumed that she had the right-of-way. It is more plausible to assume that she failed to see the approaching truck than to infer that she deliberately pulled onto its path. Given the evidence indicating a clear line of sight, the only explanation for a failure to see the truck is that Betty West failed to look for it. In such a case, she would be entirely responsible for the consequences of her actions. *Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208, 214.

Aside from the claim of damages to Betty West, claim is made by her family for loss of consortium and economic damages. Betty West's negligence precludes these damages.

In order for the Claimant to prevail in this cause, a preponderance of the evidence must demonstrate a duty on the part of the State of Illinois, a breach of duty by the State of Illinois, and a causal connection between the breach of duty and accident. (*Richardson v. State* (1983), 35 Ill. Ct. Cl. 669, 670; *Mackowiak v. State* (1982), 35 Ill. Ct. Cl. 315, 317.) The evidence produced at trial fails to prove either a breach of the State's duty or that a breach proximately caused the West accident.

The responsibility of the State to keep the highways reasonably safe does not render the State of Illinois an insurer of highway safety. *Allen v. State* (1984), 36 Ill. Ct. Cl. 442, 443-44; *Jackson v. State* (1981), 34 Ill. Ct. Cl. 63; and *Bloom v. State* (1957), 22 Ill. Ct. Cl. 582.

Furthermore, the evidence produced at trial indicates that the Respondent met its general burden to keep the highways safe for the motoring public. First,

the Department of Transportation undertook numerous measures to reduce the number of accidents at the intersection of Routes 121 and 98. Further, the measures the Department took were effective as the accident rate at the intersection declined steadily. Also, the Department was willing to, and in fact attempted to, undertake a dramatic change in the design of the junction at Routes 98 and 121 by installing an interchange. The Department was not allowed to do so and, therefore, it cannot be held responsible. According to the testimony and exhibits, there was a court order in July of 1976 which stopped all construction, all design, financed Federally, as well as all right-of-way acquisition for the project on Route 121 converting it to a freeway from Interstate 74 all the way down to Interstate 55 which would have included Routes 121 and 98.

It is therefore ordered, adjudged and decreed that this claim is denied, with prejudice.